No. 16,630.

OFSTAD *v*. SARCONI.
(252 P. [2d] 94)

Decided December 22, 1952.

Mr. PHILIP HORNBEIN, Mr. PHILIP HORNBEIN, JR., for plaintiff in error.

Messrs. DICKERSON, MORRISSEY & ZARLENGO, Mr. ROBERT W. BENNETT, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THIS action originates on a caveat filed to contest the purported last will and testament of Anna Sarconi, dated August 23, 1949. Mrs. Sarconi was the mother of four children, one of whom is Elizabeth Ofstad, the mother of Margy Ann Ofstad, a minor and caveatrix; and another is William A. Sarconi, the proponent of the purported last will and testament, and defendant in error.

The testatrix made and executed a former will on April 29, 1946, at a time when she apparently was in reasonably good physical and mental condition and conducting her own business as owner of an apartment house. This former will was, under her direction, prepared by her attorney, by the terms of which she created a trust fund which provided for payment of fifty dollars per month for her granddaughter, the caveatrix, for her education, the caveatrix to receive the entire fund on becoming twenty-five years of age. It appears that caveatrix had made liberal contributions to her children and was then desirous of providing for the care, maintenance and education of her granddaughter, and the trust fund created therefor constituted the major portion, if not all, of her estate.

Prior to August 23, 1949, the date of the last purported will, she became fatally ill from hardening of the arteries of the brain, arteriosclerotic heart, high blood pressure and faulty kidney elimination, and was hospitalized at St. Joseph's Hospital, Denver, Colorado. It appears from the medical testimony that such patients have some mental derangement; it further appears that Mrs. Sarconi was under medication, including a powerful drug.

The nurses and resident physician testified that she was continually in a state of mental confusion, disorientated, incoherent; was very deaf; could not hear without the aid of a hearing device; but apparently could understand lip reading. While in this condition, it is shown that her son, William A. Sarconi, the proponent, contacted his personal attorney and gave him directions concerning the preparation of a will which by its terms made disposition of her estate by an equal division among her four children, to the exclusion of her granddaughter, caveatrix. The will was prepared by the attorney according to directions of proponent, who, in company with his wife, called at the hospital sometime between 6:30 o'clock and 7:30 o'clock P.M. on the evening of August 23, 1949. The hospital records show that testatrix was under an oxygen tent between 6:00 and 8:00 o'clock P.M. of that evening. It is fairly clear that proponent was at the hospital at that time and was in testatrix's room at least a part of the time as appears from the following testimony of the attorney, who stated, "I started to explain and Will [the proponent] said, 'You do whatever Ted says.'" Q. "He called you Ted?" A. "Nickname. 'Do whatever Ted tells you to.'" Q. "And who has the nickname Ted?" A. "Me." Clarified, in substance, this means that the attorney started to explain something in the will to testatrix and the proponent (William A. Sarconi) told testatrix to do whatever the attorney, whose nickname was Ted, said to do. The will was then executed and a photostat copy discloses an almost illegible signature of a feeble person, very much in contrast to Mrs. Sarconi's signature as shown on a photostatic copy of the former will, made three years before.

It appears that William A. Sarconi, the proponent, kept the fact of the existence of this later will a secret from his sister, Elizabeth Ofstad, mother of the caveatrix, until the night that testatrix was buried, approximately two months after the execution of the will.

This later proposed will was presented to the county court of the City and County of Denver for probate, and after hearing before a jury on the questions of undue influence and mental incapacity presented by the caveat, the jury returned its verdict to the effect that the instrument was not the last will and testament of testatrix. As a result of this verdict, the court entered an order denying probate thereof. Following the statutory procedure, the case was taken to the district court and there tried before a jury. The trial court withdrew the question of undue influence from the consideration of the jury, which found the purported document to be the last will and testament of Anna Sarconi. Formal judgment was duly entered. Motion for new trial was dispensed with and error is specified by the caveatrix. The seven points specified for reversal are directed to the court's withdrawal of the question of undue influence; disclose the contention that the will was prepared by proponent's attorney according to instructions given to him by proponent; that the attorney never conferred with testatrix prior to the drawing of the will; that there was a confidential relationship between testatrix and proponent; that the weakened mental and physical condition of testatrix made her susceptible to the influence of proponent; that proponent at the time of the execution of the will directed testatrix to do whatever proponent's attorney told her to do; that the will as prepared was directly opposite to decedent's previous testamentary disposition in favor of her granddaughter; that the proposed will disclosed that its terms were favorable to proponent, as against the former will; refusal of the court to give caveatrix' tendered instruction containing statement of the factors to be considered by the jury in determining the issue of testamentary capacity; the failure of the court to give any instruction as to caveatrix' theory of the case; and other errors not necessary for determination.

When the question of undue influence on the

part of proponent was presented in various ways by counsel for caveatrix, it was error to withdraw that question from the consideration of the jury. A reading of the testimony discloses facts and circumstances from which undue influence might reasonably be inferred, and therefore the question should have been submitted to the jury. It has long been accepted that, ordinarily the very nature of undue influence is such that it is rarely susceptible of direct or positive proof, and must therefore rest upon circumstantial evidence. Usually, if undue influence is present, a careful effort of concealment would naturally be made and therefore direct proof would be difficult to obtain. It is accepted practice and the rule of this jurisdiction, in the matter of the propriety of directing a verdict, that the evidence offered by the party against whom the verdict is directed must be considered in its most favorable light. We have gone further in will-contest cases by saying that such facts as are established by the evidence of the caveator must be assumed as true. "In determining whether or not a will contest should be submitted to the jury, every favorable influence [inference] fairly deducible, and every favorable presumption fairly arising from the evidence produced, must be considered as facts proved in favor of contestants. Where evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the contestants. All the evidence in favor of the contestants must for such purpose, be taken as true, and if contradictory evidence has been given it must be disregarded." *Davis v. Davis,* 64 Colo. 62, 76, 170 Pac. 208. Approved in *Huber v. Boyle, Admr.,* 98 Colo. 360, 56 P. (2d) 1333.

The above quotation strikes directly at the question here presented as to the error of directing that such evidence as the caveatrix presented would be withdrawn from the jury, and, of course, is not aimed at actually determining the truth or falsity, or the weight of the

evidence, but solely for the purpose of submitting the question of the circumstances for the jury's determination. This follows the liberality practice in the admission of testimony on undue influence questions, because of the difficulty of proving such influence by direct or positive evidence. Therefore there is no precise formula for determining whether undue influence has been exerted; however, there are many circumstances from which such may be inferred, namely, confidential relationship; preparation of the will under the direction of one enjoying the confidence of the testatrix; where the proponent will enjoy benefits from the will proposed; when, at the time of execution of the will, the testatrix was fatally ill, mentally and physically; and then the fact that the execution of the will was by the proponent kept secret from other members of the family. All of these circumstances are strongly suggestive of undue influence and were either presented by the caveatrix or about which there was a rejected offer of proof.

We could unduly continue this discussion by detailing more of the evidence and applying the rule we have now and heretofore enunciated, to each particular circumstance, but consider it unnecessary, since the judgment must be reversed and the cause remanded for another trial on the question hereinbefore discussed; however, since the question of capacity to make the will was brought into question and submitted to the jury without full guidance and without the benefit of the instruction tendered by caveatrix, we deem it necessary to further say that the judgment based on the jury's adverse verdict on the question of mental capacity must be reversed, and upon another trial an instruction given similar, if not identical, to instruction No. 3 requested by counsel for caveatrix, and which is as follows: "You are instructed that in determining the issues submitted to you under the instructions herein, you should carefully look to all the evidence in this case, and in so doing you should take into consideration the physical condition of

the deceased, arising from age, sickness, suffering, by reason of disease or otherwise, or any other cause; the condition of her mind at and before the time of the execution of the will in controversy; the execution of the alleged will and its contents; the execution of any prior will by the decedent; the situation of the parties present when the alleged will was executed; the relations existing between her and the parties respectively herein at and before the execution of the will in controversy; her family and connections; the terms upon which she stood with them; the claims they or any of them might have had upon her bounty by reason of blood relationship, or otherwise; the condition and relative situation of the legatees and devisees named in the will; the situation of the testator herein and the circumstances under which the will was made, previous conduct on the part of the decedent which might indicate her normal testamentary wishes, and, in brief, every fact or circumstance which tends to throw any light upon the question submitted to you."

This instruction is almost identical with one approved by our Court of Appeals in *Blackman v. Edsall,* 17 Colo. App. 429, 437, 68 Pac. 790. The instruction given by the court in the case before us did not give full coverage of the various matters that should have been considered by the jury in arriving at a verdict on the questions involved. Other errors are specified which appear meritorious but which are not necessary to be determined herein.

The judgment is reversed and the cause remanded with directions for trial in accordance with the views herein expressed.

Mr. Justice Knauss dissents.