No. 17,418.

MARGY ANN OFSTAD, BY ELIZABETH OFSTAD, *v.* WILLIAM A. SARCONI.
(285 P. [2d] 828)

Decided May 16, 1955.

Messrs. HORNBEIN & HORNBEIN, Mr. ROY O. GOLDIN, for plaintiff in error.

Messrs. DICKERSON, MORRISSEY, ZARLENGO & DWYER, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

IT is unfortunate that this estate matter has been in litigation for over five years; it was before this Court in 1952 in the case of *Ofstad v. Sarconi*, 126 Colo. 565, 252 P. (2d) 94.

The contest originated by a caveat contesting the purported last will and testament of Anna Sarconi dated August 23, 1949. The first jury in the county court found that the instrument involved was not the last will and testament of the testatrix and the court entered its order denying probation thereof. Upon appeal to the district court, that court withdrew the question of undue influence from the consideration of the jury and the jury found the document to be the last will and testament of Anna Sarconi. The caveatrix sought reversal in this Court on several grounds; however, the judgment was reversed generally on the error of the trial court in withdrawing the question of undue influence from the consideration of the jury; the cause remanded for a new trial with directions, which it does not appear were followed too closely; and is again brought to this Court by caveatrix on an adverse verdict. Several points are urged for reversal. We will not again detail the evidence in the case, since our former opinion covers the vital parts thereof. It is necessary, however, to highlight the facts briefly for an easier approach to our present decision.

Anna Sarconi, when apparently with full testamen-

tary capacity, in April of 1946, by will, bequeathed her estate to her granddaughter, the caveatrix. In August, 1949, after becoming afflicted with her fatal illness, and when she was in the hospital under an oxygen tent, another will disposing of her estate in equal shares to her four children was presented for execution by an attorney representing William Sarconi, one of her four children, under circumstances that were brought into serious question in the former case and which is the pivotal point in the instant case. A reading of our opinion in the former case throws light on this questioned execution of the will. It appears that there had been talk among three of the four heirs to the effect that their mother's will executed in 1946 was unfair and she should have another will. It further appears that William Sarconi called on the lawyer involved, a will was prepared, and the attorney and his wife, together with proponent and his wife, appeared at the hospital and the will was finally signed at a time when the hospital records show that testatrix was under an oxygen tent, and the testimony discloses that she did not have on a hearing aid, without which she could not hear at all. As to the exact facts concerning the preparation of this will, there is a serious conflict between the testimony of the attorney and that of the proponent elicited by court and counsel in chambers to determine whether or not proponent, having been called by caveatrix as an adverse witness, should be allowed to testify over objections grounded on the so-called "dead-man's" statute.

The attorney was the chief witness for proponent in presentation of the will, and his testimony as to the facts leading up to its preparation and execution are in direct conflict to the testimony of proponent. At this point we can safely say that it was error for the trial court to refuse to permit the jury to hear the proponent's testimony when called as an adverse witness.

The testimony decisive of the error we have just men-

tioned is as follows: (The jury had heard Mr. Wheeler, the attorney, testify.)

"Q. And you prepared proponent's exhibit A at the request of her son, William Sarconi, is that right? A. No. Q. Who requested you to prepare exhibit A? A. His mother, through him. * * * Q. And you put in it what he told you to put in, didn't you? A. No. I put in what he told me his mother wanted done."

Proponent testified that he never gave Mr. Wheeler any instructions concerning the preparation of the will and stated that he told Wheeler nothing other than that his mother "wanted to talk to him about making a will and to go up and see her." He then further testified:

"Q. He called and told you that he had prepared a Will? A. Yes, he told me he had been up, talked to Mother, found out what she wanted in it—something similar to that. Q. Prepared the will? A. That's right." Mr. Wheeler further testified:

"Q. This will, this proponent's exhibit A was prepared solely on the basis of the information that you got from William Sarconi, is that right? A. That's right." The proponent Sarconi testified: "Q. Did your mother ever discuss the will with you? A. No. Q. Never told you what she wanted in it or anything, just that she wanted you to get her a lawyer? A. No, that's about all."

This strikes at the vitals of the case and presents the question as to whether the purported will was, in fact, the expression and will of Anna Sarconi, or was it an expression of the desires of the proponent? Mr. Wheeler testified that he received no information from the testatrix, but prepared the will according to what proponent told him his mother wanted. As is seen, proponent testified that he never had discussed the matter of the contents of a will with his mother. After hearing the testimony of Mr. Wheeler, the attorney, caveatrix then called proponent as an adverse witness and objections were made on the ground that proponent's testimony was barred by the so-called "Dead-Man's" statute

and thereupon counsel and proponent retired to the judge's chambers; the substance of the testimony herein set out was elicited; it completely refuted the testimony of Wheeler, and proponent's case was based on the premise that the instruction given by proponent to Wheeler originated with the testatrix. Without Wheeler's testimony to the effect that the information upon which he drew the will originated with the testatrix, it was not established to be the testatrix' will. When this testimony was refuted by proponent, it went to the matter of the credibility of proponent's principal witness. The jury had heard Wheeler's testimony, but it was not permitted to know the vital part of his testimony had been contradicted by proponent, and it cannot successfully be contended that this did not raise an issue of fact and of credibility, which should have been presented to the jury for determination.

■ The objections made to this testimony at the hearing on the ground that it was barred by the "deadman's" statute have been abandoned on this review. The trial court properly determined that the testimony should not be excluded by reason of the statute, but did erroneously exclude and withhold the same from the jury on untenable grounds, that is, the doubtful position the court seemed to take on whether or not this was allowable rebuttal, and further, the court's invasion of the province of the jury in determining who was telling the truth as between the proponent and his principal witness Wheeler, on a material question. The court said, "Now, let's see, I am not opposed to what is clear rebuttal but I am not going to let you go into the question of rebutting Wheeler * * *." The court already had said, "Now, there are discrepancies in this case and I don't think they are discrepancies that indicate deliberate falsehood on the part of anyone. I think B. O. Wheeler is telling the absolute truth. Of course, what I feel about B. O. Wheeler is probably backed by a long, long friendship with him and knowing that he is a man of unfail-

546

ing integrity and honesty; *and I feel he is telling the truth as between Mr. Sarconi and Mr. Wheeler."*

We thus have a clear indication that the trial court did not exclude the testimony on the ground of improper rebuttal, but that because the court believed Wheeler, instead of Sarconi, the court did not permit Wheeler's testimony to be disputed. The question of whether or not this testimony should have been admitted on rebuttal, is determined by the test as to whether it had been withheld by the caveatrix for the purpose of an unfair advantage. In this instance the testimony of proponent was not within the power of caveatrix to withhold; in fact the caveatrix here rightfully could assume that proponent, after Wheeler had testified, would voluntarily take the witness stand and face the responsibility of showing that the information he had given Wheeler actually came from the testatrix and fully explain the part he had taken in procuring the execution of the will. His failure to so defend his position gave caveatrix the right to call him to testify. Moreover, on the question of discretion on the part of the trial court in regulating the order of proof should always be controlled by the well-established rule that material evidence should not be rejected simply because it is offered out of the regular order, when the offerer is not guilty of taking an unfair advantage and the opponent is not prejudiced. This divergent testimony as between Wheeler and the proponent is the very crux of this case and it was purely a jury question as to which version was to be accepted, and not a question to be prejudged by the trial court and withheld from the jury.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded with directions to proceed in accordance with the views herein expressed.

On petition for rehearing, original opinion modified and as modified, adhered to, and petition for rehearing denied.

Mr. Justice Moore and Mr. Justice Knauss formerly concurring now dissent.