# No. 13,801.

## Estate of Holmes.
## Huber *v.* Boyle, Administrator.
(56 P. [2d] 1333)

Decided March 9, 1936. Rehearing denied April 27, 1936.

Mr. THOMAS A. NEVENS, Mr. ARTHUR R. MORRISON, for plaintiff in error.

Messrs. BLOUNT, SILVERSTEIN & ROSNER, for defendants in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THIS is a contest over the will of Samuel Holmes.

Holmes died August 31, 1932, leaving a purported will, dated February 21, 1930, naming as his sole devisees and legatees his nieces Daisy M. Holmes and her sister, Florence Holmes Soule. Miss Holmes filed petitions for the probate of the will and for the appointment of John M. Boyle as administrator to collect. In both she stated under oath that she and her sister were the only heirs at law of the deceased. At that time she knew that Mrs. Pratt, a great-niece of Holmes, was living in California, and Miss Holmes had been told that Mrs. W. H. Huber, Holmes's sister, had a daughter in Canada. She always

knew, or "supposed" she knew, that Mrs. Huber had a daughter. Boyle was appointed administrator to collect and a date was set for hearing on the petition for the probate of the will. The will was admitted to probate October 4, 1932, but no notice of the hearing had been served or published. On December 1, 1933, Mrs. Huber filed a motion to vacate the order admitting the will to probate. Thereupon Miss Holmes filed a petition to re-probate the will. She named therein, as heirs-at-law of Holmes, herself and her sister and also Mrs. Huber and a great-niece and four great-great-nieces. Mrs. Hubert filed a caveat. Upon the trial, the jury returned a verdict sustaining the will. An appeal was taken to the district court, where, on July 1, 1935, there was a directed verdict sustaining the will, and judgment was rendered on the verdict. Mrs. Huber seeks the reversal of that judgment.

One witness testified that in January, 1929—about a year before the execution of the will—Holmes stated that he had just received a letter from his niece informing him that his sister was dead. Another witness testified that Holmes told him that he made a will to his two nieces; that his sister was dead, otherwise he would have made the will in her favor; and that if his sister were still living, he would remember her, although he had not heard from her for some time. He made a similar statement to another witness. The postmistress testified that on one occasion she handed Holmes a letter, and that after scanning it he handed it back, saying that it purported to come from his sister, but that she was dead.

That the will was executed is admitted. That at the time he executed it Holmes labored under the mistaken belief that his sister was dead, is shown by undisputed evidence. The fact that he was mistaken in that regard would not, of itself, avoid the will. If, however, the mistaken belief was caused by false representations knowingly made by Miss Holmes and Mrs. Soule with the fraudulent purpose of inducing Holmes to make his will

in their favor, to the exclusion of his sister, and he so made the will in reliance upon such representations, the will would be void as to both. If such representations were made by one of them, the other not participating in the fraud, the devise and bequest to the wrongdoer would be void, but the devise and bequest to the innocent beneficiary would be valid in the absence of a showing that such devise and bequest were affected by the representations. *In Re Estate of Newhall,* 190 Cal. 709, 214 Pac. 231; *In Re Carson's Estate,* 184 Cal. 437, 194 Pac. 5.

Was there sufficient evidence of fraud to take the case to the jury? If there was, the judgment should be reversed; otherwise it should be affirmed.

▉ Fraud is never presumed. The one asserting it must prove it by evidence that is clear, precise and indubitable. *Denver & Rio Grande Railroad Co. v. Sullivan,* 21 Colo. 302, 41 Pac. 501; *Noble v. Faull,* 26 Colo. 467, 58 Pac. 681; *Fulton Investment Co. v. Smith,* 27 Colo. App. 279, 149 Pac. 444; *Tourtelotte v. Brown,* 4 Colo. App. 377, 36 Pac. 73. That does not mean that fraud must be established by direct and positive evidence; it is sufficient if there are established by positive and affirmative proof facts and circumstances from which fraud reasonably may be inferred. *Tourtelotte v. Brown, supra.* The rule with reference to proof of fraud must be considered in connection with the maxim ''Every presumption is made against a wrongdoer,'' hereinafter discussed.

▉ In *Davis v. Davis,* 64 Colo. 62, 76, 170 Pac. 208, we said:

''* * * in determining whether or not a will contest should be submitted to the jury, every favorable influence [inference] fairly deducible, and every favorable presumption fairly arising from the evidence produced, must be considered as facts proved in favor of contestants. Where evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the contestants. All the evidence in favor of the

contestants must for such purpose be taken as true, and if contradictory evidence has been given, it must be disregarded.

"If there is any substantial evidence tending to prove in favor of contestants, all. the facts necessary to make out their case, they are entitled to have the case go to the jury for a verdict on the merits."

Holmes died in Fairplay, Colorado, where he had lived for many years. His sister, Mrs. Huber, lived in California. Miss Holmes lived in Michigan, where for seventeen years she taught in a high school. Mrs. Soule lived in Massachusetts. Holmes occasionally, up to 1926, sent money to his sister. He also sent money to Miss Holmes and Mrs. Soule, and wrote to them occasionally. Miss Holmes had not seen Holmes since 1915, when she visited him. Mrs. Soule never visited him.

■■ When Miss Holmes was notified by the coroner that her uncle had died and that his will left everything to her and her sister, she went to Fairplay. She took no steps to notify any of Holmes's relatives other than her own sister. Among Holmes's papers were letters written to Holmes by Miss Holmes, Mrs. Soule and Mrs. Huber. Those letters Miss Holmes destroyed. "Every presumption is made against a wrong-doer." Broom's Legal Maxims (8th Ed.) 938. The wilful spoliation or destruction of papers which might contain adverse evidence gives rise to a presumption unfavorable to the one responsible therefor, since his conduct may properly be attributed to his supposed knowledge that the truth would operate against him. 10 R. C. L., p. 885; 1 Wigmore on Evidence (2d Ed.), §291; *McCleery v. McCleery*, 200 Ala. 4, 75 So. 316. Here it is contended that the letters did contain evidence adverse to the proponent of the will. The presumption is not a conclusive presumption, but may be rebutted by explanatory evidence. It is not a presumption of law, but is an inference that the jury is at liberty to draw from the fact of spoliation or destruction. Concerning the effect of such presumption,

the authorities are not in harmony. By some it is held that from the destruction it will be presumed that the evidence destroyed by a defendant would establish the plaintiff's demand, and that the defendant is held to admit the truth of the plaintiff's allegations. See *Armory v. Delamirie,* 1 Strange 505. In that case a boy found a jewel and carried it to a goldsmith's shop, wanting to know what it was. He delivered it into the hands of the apprentice, who, under pretense of weighing it, took out the stones and then told the master that it came to three halfpence. The master offered the money to the boy, who refused to take it, and insisted that the jewel be returned to him. The apprentice handed him the socket without the stones. On trover brought against the goldsmith, "several of the trade were examined to prove what a jewel of the finest water that would fit the socket would be worth, and the chief justice directed the jury, that unless the defendant did produce the jewel, and show it not to be of the finest water, they should presume the strongest against him, and make the value of the best jewels the measure of their damages, which they accordingly did." And see *Pomeroy v. Benton,* 77 Mo. 64. One author says that the inference "does not apply itself necessarily to any specific fact in the cause, but operates, indefinitely though strongly, against the mass of alleged facts constituting his cause." See 1 Wigmore on Evidence (2d Ed.), section 278. Evans, in his notes to Pothier, II, 145, states, relative to failure to produce a document, that "it cannot be admitted that such a presumption should stand in place of all other evidence and supply the total deficiency of proof." Concerning which statement Wigmore (1 Evidence, §291) observes:

"But, after all, why is any additional evidence required as a matter of law? All that is asked is that the jury be allowed to make the inference if they are in truth convinced to that effect. What hardship or unfairness is involved to the possessor of the document? He has deliberately failed to show, by production, that which it was

in his power to show, and he has by hypothesis given no other fact in explanation than the apparent one, namely, that he is afraid to submit the document to the tribunal's inspection. If there were any risk of the inference being too strong, would he not immediately make production? And does not his failure to do so indicate that the production would, in his belief, be more damaging to him than any inferences which the tribunal may make for lack of the document itself? Add to this that no one who withholds evidence can be in any sense a fit object of clemency or protection. The truth is that there is no reason why the utmost inference logically possible should not be allowable, namely, that the contents of the document (when desired by the opponent) are what he alleges them to be, or (when naturally a part of the possessor's case) are not what he alleges them to be. * * *

"Keeping in mind, then, the object of the requirement, the rule might correctly be stated as follows: The failure or refusal to produce a relevant document, or the destruction of it, is evidence from which alone its contents may be inferred to be unfavorable to the possessor, *provided the opponent, when the identity of the document is disputed, first introduces some evidence tending to show that the document actually destroyed or withheld is the one* as to whose contents it is desired to draw an inference."

As all communications by Miss Holmes and Mrs. Soule to Holmes were by letter, their letters to him were of the utmost importance as evidence in the will contest, and their destruction made it impossible to show the nature of Miss Holmes's and Mrs. Soule's communications, and also made it impossible to test the truth of the testimony of Miss Holmes that she never wrote to Holmes that his sister was dead, or suggested that he should make a will making her and her sister beneficiaries therein.

From an examination of the authorities, we conclude that the correct rule to apply in the case at bar is this: If from all the facts and circumstances in evidence in a

will contest, the jury finds that letters have been wilfully destroyed by the proponent of the will with the intention and for the purpose of making it impossible to prove the contents of the letters in any will contest that may be instituted, the jury should be permitted, but not required, to infer that the letters, if produced, would have supported the case of the contestor. Miss Holmes having admitted the destruction of the letters by her, the burden was upon her to repel the inference of fraudulent intent. Her explanation was that she was cleaning up the house after the funeral. That explanation was for the jury to consider in connection with all the other evidence in the case.

■ There was evidence that in the county court Miss Holmes testified that in 1931 she received a letter from Holmes referring to the death of his sister and asking if Miss Holmes could tell him the address of his sister's daughter. In the district court she denied that she received a letter from Holmes referring to the death of his sister. After her return home, subsequent to the funeral, Miss Holmes received from Mr. Boyle a letter written by Mrs. Huber stating that she understood that her brother was dead and asking some questions. Miss Holmes did not write to Mrs. Huber in response thereto.

There is other evidence, not necessary to repeat here, which, together with the evidence reviewed in this opinion, was sufficient to require the submission of the case to the jury.

We conclude that the court erred in directing the verdict.

The defendants in error attack two rulings of the court by cross-assignments of error.

■ The district court denied a motion to dismiss Mrs. Huber's appeal from the county court for alleged failure to comply with the statute regulating such appeals. There is sufficient in the record to justify a finding that Mrs. Huber attempted in good faith and with reasonable promptness to perfect the appeal in due time,

368

that there was no culpable fault on her part, and that the situation of which complaint is made was due primarily to acts and omissions on the part of the judge of the county court; and from the denial of the motion we assume that the district court so found. We discover no error in the ruling. *Barnard v. Moore,* 72 Colo. 146, 209 Pac. 800.

 It is said that the court erred in admitting in evidence the declarations of Holmes relative to his sister's death. The declarations tended to show his belief that his sister was dead, and for that purpose, and that purpose only, they were admissible. *In re Carson's Estate, supra.*

The judgment is reversed and the cause is remanded for a new trial.

MR. JUSTICE BOUCK dissents.