599 P.2d 931 (1979)
William MANUEL, Plaintiff-Appellee, and Cross-Appellant,
v.
FORT COLLINS NEWSPAPERS, INC., a Colorado Corporation, Stephanie Brown, Larry Steward and Jerry Sharpnack, Defendants-Appellants, and Cross-Appellees.
No. 77-746.
Colorado Court of Appeals, Div. III.
April 5, 1979.
Rehearing Denied April 26, 1979.
Certiorari Granted August 27, 1979.
*932 Tucker, Stuelpnagel & Brown, William E. Tucker, Denver, for plaintiff-appellee and cross-appellant.
Hill & Hill, Alden V. Hill, Fort Collins, for defendants-appellants and cross-appellees.
VAN CISE, Judge.
This libel action was brought by William Manuel, a public official, against Fort Collins Newspapers, Inc., which published the Fort Collins Coloradoan, the Coloradoan's editor, Jerry Sharpnack, and two of its reporters, Stephanie Brown and Larry Steward. Manuel sought damages for allegedly false and defamatory statements appearing in three articles written by Brown and Steward, one article written by Brown alone, and three editorials authored by Sharpnack. Defendants denied that the statements were false or defamatory, and, among other defenses, contended that they were substantially true, that some of the statements constituted fair comment, and that the statements were privileged under the First Amendment and were made without "actual malice."
Defendants appeal from a denial of their motions for summary judgment prior to and for directed verdicts during trial, from judgment entered on a jury verdict in favor of Manuel for $100,000 actual damages, and from a denial of their motion for judgment notwithstanding the verdict or for a new trial. Manuel cross-appeals, but asks merely for affirmance of the judgment. We reverse.
The undisputed facts are that in 1971 Larimer County acquired a computer system and housed it in the basement of the county courthouse. Commencing in April 1972, the City of Fort Collins paid to the county $2400 monthly for the use of 20% of the computer time. Manuel was the county commissioner responsible for the operation of the county computer system from the time it was installed. He resigned as a commissioner in March 1974 and was appointed director of computer services for *933 Larimer County. He was serving in this capacity when the newspaper articles were published.
In September 1973, while a county commissioner and in charge of the county computer system, Manuel, under the name "Larimer County Data Services," signed a $3500 contract with the City of Fort Collins to perform work for it on the computer, correlating some city housing survey data with information available in the county assessor's office. Utilizing the computer and a portable terminal owned by the county and installed in his home, Manuel performed the work. A $3500 check payable to "Larimer County Data Services" was delivered to Manuel in December 1973 and was deposited in his personal checking account. Additional computer work for the city was arranged for by Manuel in the name of "Larimer County Data Services," and in March 1974 a check was written by the city payable to that firm.
The articles and editorials in question were published during the period April 24 through May 9, 1974. The statements claimed to be false and defamatory are set forth in full text in the appendix to this opinion. Basically, they charged that Manuel, while a county official, used the county computer for personal gain.
The First Amendment has been interpreted to prohibit a public official or a public figure from recovering in a defamation suit unless he proves by "clear and convincing" evidence that a false and defamatory statement of fact was published concerning him by a defendant who, at the time of publication, knew that the statement was false or made it "with reckless disregard of whether it was false or not." Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). By these decisions, § 13-25-127(1), C.R.S.1973, does not apply to public official/public figure defamation cases.
"Clear and convincing" proof is greater than a mere preponderance. Gertz, supra; New York Times, supra; Whatley v. Wood, 157 Colo. 552, 404 P.2d 537 (1965). It requires proof which is "clear, precise and indubitable," Huber v. Boyle, 98 Colo. 360, 56 P.2d 1333 (1936), "unmistakable and free from serious or substantial doubt," C.J.I. 3:2, "proof which persuades the trier of fact `that the truth of the contention is highly probable.'" Page v. Clark, Colo., 592 P.2d 792 (1979).
There can be no recovery for statements that are mere expression of opinion. There is "no such thing as a false idea." Gertz v. Robert Welch, Inc., supra.
"[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Failure to investigate, Curtis, supra; Beckley Newspaper Corp. v. Hanks, 389 U.S. 81, 88 S.Ct. 197, 19 L.Ed.2d 248 (1967), or mere negligence on the part of the reporter or publisher are "constitutionally insufficient to show the recklessness that is required." New York Times, supra; Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); Walker v. Colorado Springs Sun, Inc.,, 188 Colo. 86, 538 P.2d 450 (1975).
The above standards are applied in the first instance by the trial court. Unless the court determines, on the basis of admissions in the pleadings, affidavits, depositions, answers to interrogatories and to request for admissions, and any other evidence offered, that the plaintiff can sustain his burden under those standards, it should grant summary judgment for the defendant. Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858 (5th Cir. 1970).
In the ordinary civil case a summary judgment is unusual and is not granted if there is a genuine issue as to any material fact. However, in a public official or public *934 figure defamation case, where the plaintiff has such a heavy burden of persuasion, summary judgments are frequently granted because "such an expeditious disposition of the action affords the best protection to the constitutional privilege." Adams v. Frontier Broadcasting Co., 555 P.2d 556 (Wyo.1976).
"[T]he decisions of the United States Supreme Court have added a new facet, measurement, or dimension which must now be considered and resolved by the trial courts. In other words, [in defamation actions by public officials], if the trial judge at the summary judgment stage determines that the plaintiff has offered evidence of a sufficient quantum to establish a prima facie case, and the offered evidence can be equated with the standard or test of "convincing clarity" prescribed by United States Supreme Court decisions, the motion for summary judgment should be denied." Chase v. The Daily Record, Inc., 83 Wash.2d 37, 515 P.2d 154 (1973).
"[I]n order for plaintiff to be successful on the threshold issue of summary judgment, he must come forth with strong evidence, convincingly clear evidence, that the defendant either knew the statements published were false or that he had reckless disregard of whether they were false or not. Otherwise, if plaintiff is allowed to escape summary judgment by simply a minimum showing, he has thus effectively invoked the `chilling effect of trial' doctrine." Kidder v. Anderson, 354 So.2d 1306 (La.1978).
On appeal of a case such as this, involving a First Amendment issue, we must make a de novo review of the entire record to determine whether the evidence is constitutionally adequate to sustain the judgmentwhether liability was supported with "convincing clarity""so as to assure ourselves that the judgment does not constitute a forbidden intrusion on the field of free expression." New York Times, supra; Walker, supra.
Applying the above standards to the showing made at the time of the hearing on the defendants' renewed summary judgment motion, we are compelled to conclude that the defendants' motion should have been granted and that this case should never have been tried or submitted to the jury.
The challenged factual statements pertained to Manuel's use of the county's computer equipment and facilities for personal gain while he was a county official. From these statements, the writer had expressed the opinion that Manuel was guilty of a conflict of interest as well as unethical conduct.
There was no dispute that he was a county official at the time, or that he received the money. However, Manuel claimed, according to both his affidavit and his deposition, that he had told the reporters prior to the publication of various articles and editorials that there was nothing improper in what he had done. Specifically, he had advised the reporters that the city had hired him in his private capacity to write a program for the computer which would correlate information obtained by city employees in a survey of property owners with information which the assessor's office had accumulated. Manuel also explained that it was unnecessary to use a computer in writing this program, and that, in any event, the county was not entitled to any compensation for computer time because the city paid $2,400 each month for approximately 20% use and ownership of the computer. Manuel advised the reporters that the private firm was formed simply for the purpose of compensating Manuel and other county employees in the computer department for many hours of overtime work. On the basis of this explanation to the reporters, and other information which was available to corroborate his explanation, Manuel argued that the "knowledge of falsity" and "reckless disregard" requirements of the New York Times rule could be established in the course of a trial.
In support of the renewed motion, defendants established, by affidavit and depositions, that while Manuel claimed it was unnecessary to use the computer in conjunction with preparation of the city's program, *935 he had, in fact, used both the computer and the portable terminal to test the program. In addition, while the city had paid for 20% use time of the computer each month, at the time the articles and editorials were published, title to the computer rested in the county by virtue of a lease purchase agreement with Digital Equipment Corporation. In addition, title to the portable terminal which Manuel used in his home was in the county by virtue of a separate agreement with "Texas Instruments." The check issued by the city under the contract had been deposited by Manuel in his personal account, and the assistant city manager had informed the reporters that the city was under the impression that its contract for the program was with the county and not with Manuel in his private capacity.
On this record, Manuel failed to show that he would be able to produce at trial sufficient evidence to prove with "convincing clarity" that defendants acted with "actual malice" as defined in New York Times, suprathat defendants made any of the allegedly defamatory statements with knowledge of its falsity or "with reckless disregard as to whether it was false or not." The county computer and the county terminal were in fact used in conjunction with writing the city's program; and Manuel did receive personal compensation for writing the program. Finally, even if the published statements concerning conflict of interest and unethical conduct were statements of fact and not of opinion, the statements to the defendants by the assistant city manager to the effect that the city thought it was contracting with the county, and the other circumstances of this case, warranted the published assertions relative to conflict of interest and unethical conduct.
We need not address the other issues raised by defendants, and our disposition of this case also disposes of plaintiff's cross-appeal.
The judgment is reversed, and the cause is remanded with directions to dismiss the action.
PIERCE and RULAND, JJ., concur.

APPENDIX
Statements alleged by Manuel to be false, malicious, and defamatory concerning him and to have been known by defendants to be false are as follows:

4/24/74 Article (Brown)
"Manuel, interviewed today, said flatly that the employes are `moonlighting,' . . ..
Manuel sees no conflict in the fact that employes are using county equipment in the private business. . . ."

4/26/74 Article (Steward and Brown)
"They [County Commissioners Warren Wolaver and John A. Michie] also were asked if the county had any regulations regarding the use of county facilities by its employes for their own profit.
`We don't have any written policies, but that goes unsaid,' Michie said.
`I think county equipment should be for county work,' Wolaver added."

4/28/74 Editorial (Sharpnack)
"There is now no question that the City of Fort Collins has been buying computer services from a private company while under the impression it was making those purchases from the county. And it is known that the company is operated with the use of county equipment and county personnel by ex-County Commissioner William C. Manuel, the county director of computer services and organizer of the moonlighting Larimer County Data Services.
But the overriding issue, the big question, lies in the fact that a county official with virtually 100 percent control of a much-in-demand and expensive service could be allowed to be in a position of selling that public service for personal gain, a position where he has the potential of deciding whether a particular service is sold to the county or sold to him. Such a position must be held by an individual wholly above reproach. But this is an almost classic example of conflict-of-interest in progress.
*936 The legality of this situation may be in question, but there is no question that it is unethical.
. . . . .
What also might come under the heading of naivete was the assumption on the part of the commissioners that there was no need for regulations prohibiting use of county facilities by county employes for their own profit. `We don't have any written policies,' said Commissioner John Michie, `but that goes unsaid.' Fortunately, the data service operation was learned of before it had pocketed a great deal of taxpayers' money.
What remains is for the commissioners to get their computer director out of private enterprise, and to come up with a policya written one this timeprohibiting such arrangements in the future."

4/30/74 Article (Steward and Brown)
"County Assessor Richard M. Green says he knows of no authorization being given to county computer center head William C. Manuel to use the assessor's tax rolls as a data base for Manuel's private firm.
. . . . .
When Commissioner Warren Wolaver was asked today by the Coloradoan if he knew of the terminal in Manuel's home, he exclaimed, `Jesus . . . excuse my language, but I didn't know anything about it.
. . . . .
Green was then asked if he was aware that Larimer County Data Services a firm started by Manuel which moonlights out of the county computer center, had to use the assessor's rolls to successfully complete a city contract.
. . . . .
The city manager added that the study, which Manuel has received $3,500 for without reimbursing the county for computer time, could not have been done at another computer center, such as the one at Colorado State University, without the assessor's data.
County Commissioners have said they will meet with Manuel to discuss his private company and its operation. The commissioners said they weren't informed Manuel had formed the firm or that he was receiving money for work done on the county's computer."

5/1/74 Editorial (Sharpnack)
"Expressionless, they heard their former colleage present his defense and justification for operating county equipment for personal gain, how it was a saving to the taxpayer and a valuable assist for the City of Fort Collins, how it was common practice to take county terminals home to save time and money.
. . . . .
. . . . Obviously, the `leasing' of county equipment for the personal benefit of county employes is absolutely untenable, and the commissioners are charged with taking steps that will not only eliminate the present mess, but to be firm and tough enough so that anyone else in county government would find such practice unthinkable.
. . . . .
The commissioners finally seem to want to put their house in order. How they handle the Manuel situation from here on in will show just how serious they are in this matter. If they act with courage they will have made a good start. But a slap on the wrist will not suffice."

5/8/74 Article (Steward and Brown)
"Commissioners and city officials have maintained they had no knowledge Manuel was doing private contracting work using the county's computer.
. . . . .
Manuel's resignation came two weeks after the Coloradoan first disclosed that he had formed a private firmLarimer County Data Serviceswhich worked as a moonlighting company out of the county's computer center."
*937 5/9/74 Editorial (Sharpnack)
"On April 24, the Coloradoan disclosed that William C. Manuel, head of the county's computer service and a former commissioner, had been quietly using county facilities to operate a private company. Two weeks later, to the day, Manuel was fired. . . It was really the only acceptable course open to the commissioners, but they did what had to be done and it was done with dispatch, a commendable process.
. . . . .
The district attorney waits in the wings while the county attorney tried to decide whether the board should initiate a criminal complaint."