Nancy BENNETT; Deborah Robinson; Harvey Robinson; Joann Baker Paul; Catherine Lykken; Jack Morrison; Rustic Repose, Inc., and Goldfarb/Colorado, Inc., Plaintiffs–Appellees,

v.

GREELEY GAS COMPANY, a division of Atmos Energy Corporation, Defendant–Appellant,

and

U.S. West Communications, Inc., Defendant.

No. 96CA1347.

Colorado Court of Appeals, Div II.

June 11, 1998.

Rehearing Denied July 30, 1998.

Certiorari Denied Jan. 11, 1999.

Burg & Eldredge, P.C., Michael S. Burg, David P. Hersh, Diane Vaksdal Smith, Rosemary Orsini, Englewood, for Plaintiffs–Appellees.

Holland & Hart LLP, Joseph W. Halpern, Timothy M. Rastello, Stephen G. Masciocchi, Denver; Kerber & Sasz, L.L.P., William L. Sasz, David W. Kerber, Englewood, for Defendant–Appellant.

BRIGGS, Judge.

In these consolidated negligence actions, defendant, Greeley Gas Company (Greeley Gas), appeals the judgments for damages entered on jury verdicts against it and in favor of plaintiffs, Nancy Bennett; Deborah Robinson; Harvey Robinson; Joann Baker Paul; Catherine Lykken; Jack Morrison; Rustic Repose, Inc.; and Goldfarb/Colorado, Inc. We reverse and remand for a new trial.

In 1994 an underground gas pipeline fractured. Natural gas escaped and migrated along the pipeline into a commercial building in the heart of the mountain town of Steamboat Springs. A basement hot-water heater ignited the gas. The explosion and resulting fire demolished the building. Many people

were injured, some severely. Gas service was cut off to over half the town's residents.

Evidence introduced at trial indicated the cause of the fracture was damage to the pipeline eighteen years earlier, when it had been gouged during excavation activities conducted by A.A. Cox Construction (contractor). Defendant U.S. West had hired the contractor to lay telephone line.

The damaged pipeline had been repaired by wrapping it in field tape. It was undisputed the pipeline should have been replaced.

Plaintiffs brought suits against Greeley Gas and U.S. West. The principal factual dispute at trial was whether the repair in 1976 had been made by employees of the contractor, for whom U.S. West was held legally responsible, or of Greeley Gas.

The jury awarded a total of $2.5 million in compensatory damages solely against Greeley Gas. It found both Greeley Gas and U.S. West negligent but further found that the negligence of Greeley Gas was the sole legal cause of plaintiffs' damages. The jury awarded punitive damages against Greeley Gas in the same amounts as the awards of compensatory damages.

On appeal, Greeley Gas named both plaintiffs and U.S. West as parties. U.S. West filed a motion seeking to be dismissed, asserting that Greeley Gas was not a party to the claims between plaintiffs and U.S. West and thus had no standing to designate U.S. West as a party on appeal. It further argued that Greeley Gas would not be prejudiced by its dismissal from the appeal because Greeley Gas on retrial could designate U.S. West as a nonparty at fault.

In response, Greeley Gas asserted it had standing because it was a party aggrieved by the judgment imposing liability solely on it. Plaintiffs, in their response, stated they were not themselves appealing because the trial court had committed no errors. However, plaintiffs disagreed with the contention that, in the event of a retrial, Greeley Gas could designate U.S. West as a nonparty at fault.

Another division of this court granted the motion of U.S. West to be dismissed as a party in this appeal. That ruling is not before us. Thus, at this juncture, only Gree-

ley Gas and plaintiffs remain as parties in this appeal.

## I.

Greeley Gas first contends the trial court erred in three rulings admitting evidence. We conclude that errors in two of the rulings require a new trial.

The trial court permitted plaintiffs to admit evidence that a federal safety regulation, 49 C.F.R. 192.614, had been enacted in 1982, twelve years before the explosion but six years after the negligent repair, as well as evidence indicating Greeley Gas had been found in violation of the regulation five years after its enactment. The court also permitted plaintiffs to introduce evidence indicating that Greeley Gas had failed to implement recommendations made by the Public Utilities Commission (PUC) after the 1994 explosion.

■ Initially, we note that plaintiffs in a footnote to their answer brief have asserted, without citation of authority, that Greeley Gas "may have" waived its evidentiary arguments on appeal by failing to object contemporaneously when the evidence was introduced. However, Greeley Gas had filed motions in limine on each point, and the supreme court has concluded that such a filing is sufficient to preserve an objection to evidence. *Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322 (Colo.1986); see also *People v. Pratt*, 759 P.2d 676 (Colo.1988); but cf. *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244 (Colo.1996) (review of a denial of a motion for summary judgment, even when based on a point of law, is not preserved for appeal unless renewed at trial).

The trial court did at one point appear to be reserving its ruling because of doubt about what the evidence might show. However, it later concluded, based on offers of proof, that the evidence would be admitted. The court stated that its ruling did not prevent Greeley Gas from again raising the issues if the evidence did not come in as anticipated, but it did not require Greeley Gas to do so. In these circumstances, we conclude the issues are properly preserved for appeal.

## A.

The Department of Transportation in 1982 promulgated a regulation, 49 C.F.R. 192.614, that provided in pertinent part:

(a) [E]ach operator of a buried pipeline shall carry out in accordance with this section a written program to prevent damage to ... pipeline by excavation activities....

(b) The damage prevention program required by paragraph (a) of this section must, at a minimum:

. . . .

(6) Provide as follows for inspection of pipeline that an operator has reason to believe could be damaged by excavation activities:

(i) The inspection must be done as frequently as necessary during and after the activities to verify the integrity of the pipeline....

In its motion in limine before trial, Greeley Gas sought to exclude any evidence relating to the regulation, including evidence indicating Greeley Gas was not in compliance with the regulation in 1987. Greeley Gas argued the evidence was irrelevant and unfairly prejudicial because the regulation was enacted in 1982, some six years after the negligent repair, and its alleged noncompliance was cited in 1987, another five years later.

In response, plaintiffs asserted the regulation enacted in 1982 evidenced minimum standards of conduct that Greeley Gas, in exercising the highest degree of care, should have been following in 1976. They further asserted the jury could find that, if Greeley Gas had established and followed the 1982 safety standards of conduct after their promulgation, the damage to the pipe could have been discovered before the 1994 explosion. In addition, the jury could reasonably infer from the fact that Greeley Gas had not promulgated and enforced a written program in 1987, including inspection requirements, it probably was not enforcing safety standards, including inspection requirements, in effect in 1976.

Finally, plaintiffs argued the evidence was admissible in support of their claims for punitive damages. This included not only the jury's initial awards of punitive damages, but also the court's subsequent determination, pursuant to its statutory authority under 13–21–102, C.R.S.1997, whether to increase any punitive damages awarded by the jury.

None of the parties cited any authority in support of their positions. The trial court ultimately accepted the argument that the evidence was admissible because the jury could infer from noncompliance in 1987 that Greeley Gas had probably failed to follow inspection standards in effect in 1976. The court also held the evidence was admissible because the conduct of Greeley Gas during the pendency of the action was relevant to the court's statutory duty to determine whether to increase any punitive damage award.

On appeal, Greeley Gas again challenges the court's admission of evidence relating to the regulation. Unlike its argument at trial, Greeley Gas on appeal makes separate arguments regarding admission of evidence pertaining to the regulation itself and to its alleged violation. We address each argument in turn.

## 1.

■ The first contention of Greeley Gas is that evidence of the regulation itself was not admissible. We agree.

■ Safety codes and regulations are admissible when offered in support of expert testimony and when introduced as objective safety standards generally recognized and accepted as such in the type of industry involved. See *Miller v. Solaglas California, Inc.*, 870 P.2d 559 (Colo.App.1993). However, at least absent evidence that a safety code or regulation was intended to apply retroactively, it has generally been held that evidence concerning them is not admissible to establish the standard of care at a time before their enactment. See *Kedar v. Public Service Co.*, 709 P.2d 15 (Colo.App.1985); see also *Dunkle v. West Penn Power Co.*, 400 Pa.Super. 334, 583 A.2d 814, 816 (1990) ("As a general rule, subsequently enacted regulations are irrelevant to establish an earlier duty of care."); *White v. Clark Equipment Co.*, 262 Ark. 158, 553 S.W.2d 280 (1977);

*Ball v. New Jersey Bell Telephone Co.*, 207 N.J.Super. 100, 504 A.2d 29 (1986); *Trimarco v. Klein*, 441 N.Y.S.2d 62, 82 A.D.2d 20 (1981), aff'd in relevant part, rev'd on other grounds, 56 N.Y.2d 98, 451 N.Y.S.2d 52, 436 N.E.2d 502 (1982); see generally D. Feld, Annotation, Admissibility of Safety Codes or Standards, 58 A.L.R.3d 148, 155 (1974) ("In a few cases where safety codes or standards have been held inadmissible, courts, without stating any general rule concerning the admissibility of such codes or standards, have emphasized that the codes or standards were published subsequent to the alleged negligence involved in the litigation.").

We find the reasoning in this line of cases persuasive in the circumstances presented here. The relevance of the regulation to the standard of care owed six years earlier is questionable at best. Any marginal relevance is clearly outweighed by the potential for confusion and unfair prejudice. See CRE 403.

Furthermore, plaintiffs would not have been unfairly prejudiced by the exclusion of the evidence. Without mention of the regulation, they could have presented evidence in the form of an expert's testimony that the duty of care in 1976 required a written program to prevent damage to pipelines and inspections as frequently as necessary to verify the integrity of the pipeline. See *Kedar v. Public Service Co.*, supra.

Plaintiffs' reliance on the decision by a division of this court in *Miller v. Solaglas California, Inc.*, supra, is misplaced. The plaintiff in that case was injured in a collision between two vehicles. The windshield of the oar he was driving popped out, and he was thrown from the vehicle. The defendant sought to exclude evidence of a federal safety standard applicable to certain types of vehicles, but not the type the plaintiff had been driving.

The division in Miller concluded that the failure to comply with the safety standard was not, by itself, evidence of negligence on the part of the defendant because the standard did not apply to the vehicle. However, the standard did constitute evidence which, together with other evidence regarding the design of the windshield and window reten-

tion systems, could be taken into account by the jury in assessing whether the defendant had breached its duty of care owed to the plaintiff.

▮▮▮▮ We agree with the division in Miller that a safety code or regulation in effect at the time of the alleged negligence may be admissible in some circumstances, even if not technically applicable to the situation in question, because it gives some indication of the standard of care at the time of the alleged negligence. See generally W. Prosser, Torts 36 (4th ed. 1971). In contrast, codes and regulations enacted after the alleged negligence may result from research conducted, information obtained, impracticalities eliminated or mitigated, or even a consensus formed, after the alleged negligence. As a result, such codes and regulations do not in themselves ordinarily give a similar indication of the duty of care years before their enactment. See *White v. Clark Equipment Co.*, supra; *Ball v. New Jersey Bell Telephone Co.*, supra; *Trimarco v. Klein*, supra; *Dunkle v. West Penn Power Co.*, supra.

Finally, the evidence presented at trial did not support plaintiffs' offer of proof that compliance with the 1982 regulation would have led to discovery of the leak before the explosion. The trial court noted during the conference on jury instructions that the evidence at trial had established that the fracture in the pipeline occurred instantaneously, shortly before the explosion. Even if Greeley Gas had fully implemented the program and inspections required by the 1982 regulation, it would not have prevented the pipeline failure in 1994 or the resulting explosion.

Plaintiffs' counsel did not dispute the court's summary of the evidence. In their response, they asserted only that the evidence was admissible on the issue of punitive damages. At that point, plaintiffs withdrew their claim of negligence per se based on the regulation.

In sum, evidence that the regulation was enacted in 1982 was not admissible to establish the standard of care in 1976, and it was undisputed that full compliance with the regulation, under any construction of it urged by plaintiffs, would not have led to the discovery

of the leak or prevented the explosion. We therefore conclude evidence of the regulation itself was not admissible and, because its admission unfairly prejudiced Greeley Gas, its admission was reversible error.

### 2.

Greeley separately contends that evidence indicating it was not in compliance with the 1982 regulation in 1987 was inadmissible. It argues that, contrary to the trial court's conclusion, the evidence was inadmissible to support plaintiffs' allegation that Greeley Gas was not in compliance with inspection standards in effect in 1976 or to support their claim for punitive damages. We again agree.

Under CRE 404(b) evidence of other crimes, wrongs, or acts is not admissible to prove the character of a party in order to show that the party acted in conformity with that character on a specific occasion. Such evidence may be admissible to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake.

We note that Greeley Gas failed to bring CRE 404(b) to the trial court's attention. However, it did argue that any relevance a violation of the 1982 standard in 1987 may have in establishing its conduct in 1976 was outweighed by confusion and unfair prejudice, which is in part the focus of the rule. Further, plaintiffs do not argue on appeal that Greeley Gas failed to preserve the issue by not making a sufficiently specific objection at trial.

■ Here, evidence of any failure by Greeley Gas to comply with the 1982 regulation in 1987 did not satisfy any of the exceptions enumerated in CRE 404(b). Its introduction as evidence supporting the contention that Greeley Gas failed to comply with safety standards in effect during the 1976 excavation fell within the proscription of the rule.

■ The admissibility of the evidence to support the claims for punitive damages presents a more difficult question. In Colorado, exemplary damages are a creature of statute. *Mince v. Butters*, 200 Colo. 501, 616 P.2d 127 (1980). Our current statute, 13–21–102, provides for the jury to assess punitive damages, but gives the trial court authority to increase the award. This creates the potential for evidentiary difficulties.

■ The function of the jury is distinct from that of the court. The purpose of the jury's award of punitive damages is to punish the wrongdoer for willful and wanton conduct. *Lira v. Shelter Insurance Co.*, 913 P.2d 514 (Colo.1996). However, the conduct referred to is that causing the injuries. It is the quality of that tortious act, not the character of the wrongdoer, that justifies exemplary damages. See *Forquer v. Pinal County*, 22 Ariz.App. 266, 526 P.2d 1064 (1974); see also *Amber Properties, Ltd. v. Howard Electrical & Mechanical Co.*, 775 P.2d 43 (Colo.App.1988). As a result, acts of the wrongdoer occurring after the event creating liability ordinarily are not material to the jury's award of exemplary damages. See *R.E. Linder Steel Erection Co. v. Wedemeyer, Cernik, Corrubia, Inc.*, 585 F.Supp. 1530 (D.Md.1984); *Forquer v. Pinal County, supra*; see also CRE 404(b).

■ Here, evidence of any failure by Greeley Gas to comply with the 1982 regulation in 1987 was not material to the event creating liability in 1976. Nor was it material to any aggravation of plaintiffs' injuries. See *Forquer v. Pinal County, supra*. Accordingly, the evidence could not have been properly admitted for the jury's consideration of punitive damages. See *American National Watermattress Corp. v. Manville*, 642 P.2d 1330 (Alaska 1982).

Nevertheless, 13–21–102(3)(a), C.R.S.1997, permits the court to increase any award of exemplary damages if it is shown that the defendant "has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner ... during the pendency of the case."

■ This does allow the court, unlike the jury, to consider behavior after the alleged negligence, but only that behavior during the pendency of the case. Because the case was not filed until after the 1994 explosion, evidence that Greeley Gas in 1987 was not in compliance with the 1982 regulation

was not evidence of behavior during the pendency of the case. Hence, the evidence was not material even to the trial court's determination.

We therefore conclude that evidence of the alleged failure by Greeley Gas to comply in 1987 with the 1982 regulation, like evidence of the regulation itself, was not admissible and its admission was also reversible error.

### B.

Greeley Gas contends that evidence regarding its alleged failure to implement recommendations made by the PUC following the 1994 explosion was likewise inadmissible. It does not challenge the trial court's determination that 13–21–102(3)(a) permitted the court to consider the evidence in determining whether to increase the awards of exemplary damages. Rather, it asserts on appeal only that the court should have heard the evidence out of the presence of the jury.

Greeley Gas did not request that the trial court follow the procedure now suggested. Thus, we will not consider the issue on this appeal. See *Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo.1984).

### II.

Several issues raised on appeal may arise again during the new trial. We will therefore address them.

■ Initially, we note that, in connection with some of these issues, plaintiffs argue Greeley Gas has abandoned any objections to rulings at trial in favor of its co-defendant, U.S. West, by failing to keep U.S. West a party to this appeal. However, to the extent that a ruling had an adverse impact upon Greeley Gas with respect to a claim against it, the issue is properly preserved for appeal. See generally 5 C.J.S. Appeal and Error 741 (a defendant injured or prejudiced may predicate error on a ruling favorable to a co-defendant).

### A.

■ Greeley Gas contends the court erred in admitting testimony regarding other natural gas explosions not involving Greeley Gas. It asserts the evidence was inadmissible under CRE 404(b). However, that rule applies only to other crimes, wrongs, and acts of the party seeking the protection of the rule, not the acts of third-parties.

■ The testimony was briefly elicited during cross-examination of a witness called by Greeley Gas for the purpose of impeaching testimony by the witness about the safeness of natural gas. When so limited in scope and use, we find no abuse of discretion in its admission.

### B.

Greeley Gas asserts the trial court erred in precluding one of its witnesses from testifying. The witness was a former employee of the contractor who had admitted in his deposition to wrapping gas lines with field wrap during the 1970s. He testified that Public Service provided the field wrap to him and other employees.

■ Greeley Gas argues the evidence was relevant to support its assertions that employees of the contractor and not Greeley Gas had attempted the pipeline repair, and that Greeley Gas was never made aware the pipeline had been damaged. However, the witness had not worked in the town. The contractor's employees who worked in the town testified that they had never used or been given field wrap. According to their testimony, had they hit a pipeline, they would have called Greeley Gas.

In light of the tangential and speculative nature of the evidence, we perceive no abuse of discretion in the court's decision to preclude the testimony. See *Baird v. Power Rental Equipment, Inc.,* 191 Colo. 319, 552 P.2d 494 (1976).

### C.

■ Greeley Gas next asserts the court erred in refusing to instruct the jury that it was not an "insurer." The instruction tendered by Greeley Gas read:

A gas utility distributing natural gas through its gas distribution system is not required to protect against any and all possible eventualities. Such a requirement

would make the utility company an insur-·er. The term 'insurer' means one who guarantees safety to any one.

While no pattern instruction exists on the subject, Greeley Gas points to *City of Fountain v. Gast,* 904 P.2d 478 (Colo.1995), in which the supreme court rejected a challenge to a similar instruction. However, the holding was merely that the trial court did not err in giving the instruction. The supreme court did not conclude that giving such an instruction is required. Here, the jury was instructed that Greeley Gas owed a duty to use the highest possible degree of care. By its terms, the instruction did not require Greeley Gas to protect against any and all eventualities or otherwise make Greeley Gas an insurer. In these circumstances, we perceive no error in the trial court's rejection of the proposed instruction. See *Underwood v. Dillon Companies, Inc.,* 936 P.2d 612 (Colo. App.1997) (it is not reversible error to refuse a tendered instruction if its contents are encompassed in other instructions); see also *Davis v. Fortino & Jackson Chevrolet Co.,* 32 Colo.App. 222, 510 P.2d 1376 (1973).

### D.

The next contention of Greeley Gas is that the court erred in refusing to give its requested instruction on concurrent cause, which tracked the language of CJI–Civ.3d 9:28 (1988). It contends the instruction the court gave, which was patterned after CJI–Civ.3d 9:26 & 9:27 (1988) but modified to apply to the two defendants, was inadequate because it did not inform the jury that U.S. West could be found liable even though its negligence may not have been the last or nearest cause.

█ At trial, Greeley Gas asserted that, even if had been negligent in making the repair, U.S. West, through the contractor, was also negligent for having initially damaged the pipeline. The instruction requested coincided with this theory of defense, properly stated the law, and was supported by evidence before the jury.

Without addressing whether the refusal to give the requested instruction would in itself have required reversal, we agree that in any new trial an instruction should be given on concurrent causes pursuant to CJI–Civ.3d 9:28. In particular, the instruction should inform the jury that a cause need not be the last or nearest cause. See also *Jordan v. Bogner,* 844 P.2d 664 (Colo.1993).

### E.

Greeley Gas objects to the court's refusal to instruct the jury that the contractor was required to exercise the highest degree of care while excavating around the pipeline. It argues the refusal was inconsistent with the court's imposition as a matter of law of respondeat superior liability on U.S. West. We agree.

Plaintiffs initially argue that, because the jury found that U.S. West through its contractor was negligent, any harm in failing to instruct the jury that the contractor owed the highest degree of care was harmless. While that may be true in regard to the first trial, the issue is likely to arise again on retrial.

We note that the pleadings on appeal concerning the motion by U.S. West to be dismissed as a party indicate that, on retrial, the issue may arise whether U.S. West can be designated a nonparty at fault, pursuant to 13–21–111.5(3)(b), C.R.S.1997. That issue is not before us and we express no opinion about it. We will, however, address the issue that is properly before us: If U.S. West is so designated, is Greeley Gas entitled to have the jury instructed that the contractor owed the highest degree of care.

The trial court found, for purposes of imposing respondeat superior liability, that as a matter of law the contractor's excavation around the pipeline constituted an inherently dangerous activity. However, the court refused to instruct the jury that the contractor had a duty to exercise the highest degree of care while engaged in that activity. It instead instructed the jury only that the contractor was required to exercise reasonable care. At the same time, the court determined as a matter of law that Greeley Gas, by carrying on an inherently dangerous activity, was required to exercise the highest possible degree of skill, care, caution, dili-

gence, and foresight with regard to that activity, and it so instructed the jury.

We note at the outset that the concept of an "inherently dangerous" activity, requiring the highest degree of care, is different from the "ultrahazardous activity" rule applied in real property trespass cases, for which strict liability is imposed. *Western Stock Center, Inc. v. Sevit, Inc.,* 195 Colo. 372, 578 P.2d 1045 (1978).

An activity will qualify as 'inherently dangerous' when it presents a special or peculiar danger to others that is inherent in the nature of the activity or the particular circumstances under which the activity is to be performed, that is different in kind from the ordinary risks that commonly confront persons in the community, and that the employer knows or should know is inherent in the nature of the activity or in the particular circumstances under which the activity is to be performed.... [A]n activity may be inherently dangerous even if it can be performed safely by taking proper precautions.

*Huddleston v. Union Rural Electric Ass'n,* 841 P.2d 282, 290 (Colo.1992); compare *Hartford Fire Insurance Co. v. Public Service Co.,* 676 P.2d 25 (Colo.App.1983) (doctrine of strict liability applicable to ultrahazardous activities does not extend to transmission of natural gas) with *Blueflame Gas, Inc. v. Van Hoose, supra* (suppliers of propane gas owe highest degree of care).

For inherently dangerous activities, the supreme court has rejected its earlier approach of applying the same standard of reasonable care applied in other situations, with the degree of care naturally increasing with the danger of the activity. Instead, if a party has engaged in an inherently dangerous activity, the jury is to be instructed that the party owed a duty to act with the highest degree of care. *Huddleston v. Union Rural Electric Ass'n, supra;* see also *Bayer v. Crested Butte Mountain Resort, Inc.,* 960 P.2d 70 (Colo. No. 97SA145, May 18, 1998).

The supreme court has nevertheless held that a jury is to be instructed a defendant owes the highest degree of care only if the court concludes that all reasonable minds would concur the defendant engaged in an activity that posed a high risk of injury to others. If not, the court ought not to give an instruction prescribing any particular degree of care. *Imperial Distribution Services, Inc. v. Forrest,* 741 P.2d 1251 (Colo.1987).

In contrast, the supreme court has concluded that, for the purpose of determining whether the doctrine of respondeat superior is applicable, the issue whether an activity is inherently dangerous is a question of fact for the trier of fact. However, even for this purpose, the court may make the determination as a matter of law in appropriate circumstances. *Huddleston v. Union Rural Electric Ass'n, supra.* Greeley Gas does not challenge on appeal the trial court's instruction to the jury that it owed the highest degree of care, based on the court's finding as a matter of law that at all relevant times Greeley Gas was engaged in an inherently dangerous activity. It instead argues that, because the trial court found that the contractor had engaged in an inherently dangerous activity for purposes of imposing respondeat superior liability, the court should have instructed the jury that the contractor, like Greeley Gas, owed the same highest degree of care. In response, plaintiffs argue, without citation to authority, that a court may find an activity to be "inherently dangerous" as a matter of law for purposes of determining vicarious liability but, at the same time, decide as a matter of law that the same activity is not inherently dangerous for purposes of imposing the highest possible degree of care. Contrary to plaintiffs' argument, the trial court, in finding as a matter of law that the contractor had engaged in an inherently dangerous activity for purposes of respondeat superior liability, necessarily determined that, even when the evidence was viewed in the light most favorable to U.S. West, the jury could reach no other conclusion. See *Huddleston v. Union Rural Electric Ass'n, supra.* That determination is not challenged on appeal. Hence, in the new trial, if the court permits U.S. West to be designated as a nonparty at fault, it should instruct the jury that the contractor owed the highest degree of care, the same as Greeley Gas. *Imperial Distribution Services, Inc. v. Forrest, supra.*

### F.

Greeley Gas also objects to the following instruction the court gave the jury at plaintiffs' request:

> If the criteria is [sic] met for the awarding of exemplary damages, you must award the same percentage of actual damages as exemplary damages for each plaintiff, which award of exemplary damages shall not exceed the total award of actual damages for each plaintiff.

■ Plaintiffs cite no authority in support of their instruction. Further, the only limitation on the jury's award of punitive damages in Colorado's current exemplary damages statute, 13–21–102, C.R.S.1997, is that the jury may not award exemplary damages in an amount greater than actual damages. Finally, a principal factor in determining whether and in what amount to award punitive damages is the nature and extent of the harm the defendant caused the individual plaintiff. See generally Restatement (Second) Torts 908(2) (1979); see also *Mince v. Butters, supra.*

■ Here, each plaintiff asserts a different and unique harm. We therefore conclude that in any new trial the court should remove from the jury instructions the requirement that the jury award punitive damages in the same percentage to all plaintiffs.

### G.

Greeley Gas next contends the court erred in striking its comparative negligence defense against one of the plaintiffs. In the circumstances presented here, we agree.

■ Under Colorado's comparative negligence statute, 13–21–111, C.R.S.1997, the degree of the parties' fault is to be determined by the fact finder. Only in the clearest of cases, when the facts are undisputed and reasonable minds can draw but one inference, should relative degrees of fault be determined as a matter of law. *Lyons v. Nasby,* 770 P.2d 1250 (Colo.1989).

■ Here, evidence was introduced indicating that one plaintiff, who was inside the building before the explosion, stated on at least two occasions after the explosion that she had smelled gas ten to fifteen minutes earlier. One of the statements had been videotaped.

Even if we were to assume that the bare evidence of smelling gas before the explosion would not alone ordinarily support an instruction on comparative negligence, plaintiff at trial denied having smelled any gas before the explosion. This effectively prevented Greeley Gas from developing other evidence concerning subjects such as the strength of the odor she had smelled, the past experience of the witness with natural gas, or the actions she took after smelling the gas.

The credibility of this plaintiff was for the jury to determine. If the jury were to determine her testimony to be intentionally false, indicating a consciousness of guilt, an attempt to prevent further information from being elicited, or both, then it could reasonably infer that she was at least partially at fault for her injuries. See *United States v. Ginn,* 124 F.Supp. 658, 665 (E.D.Pa.1954) ("The demeanor of a witness and the probability of [her] story are themselves important considerations in determining the truth of [her] statements which the jury may use not only to reject [her] testimony but to affirmatively infer that another state of facts actually existed."), rev'd on other grounds, 222 F.2d 289 (3d Cir.1955); Cf. *People v. District Court,* 200 Colo. 65, 612 P.2d 87 (1980); *Estate of Holmes,* 98 Colo. 360, 56 P.2d 1333 (1936); *Zebrowski v. State,* 50 Wis.2d 715, 185 N.W.2d 545 (1971). Accordingly, if the same evidence is presented in a new trial, the court should give the comparative negligence instruction requested by Greeley Gas. See *Lyons v. Nasby, supra.*

### H.

Finally, Greeley Gas contends the court erred in awarding prejudgment interest on future damages to plaintiffs who suffered no personal injuries. We conclude that, if plaintiffs prevail on retrial, clarification of any award of prejudgment interest will be needed.

■ The right to recover prejudgment interest for damages other than result-

ing from personal injuries is a matter of law determined pursuant to 5–12–102, C.R.S. 1997. Cf 13–21–101, C.R.S.1997. Prejudgment interest is awarded in property damage cases from the date the injured party was wronged. *Federal Insurance Co. v. Ferrellgas, Inc.,* 961 P.2d 511 (Colo.App. 96CA1090, Oct. 30, 1997). However, prejudgment interest may not be awarded for future lost profits or earnings. *Life Care Centers v. East Hampden Associates,* 903 P.2d 1180 (Colo. App.1995).

Here, some plaintiffs suffered damages other than from personal injuries. The jury was given only a general verdict form for each plaintiff, which did not segregate past from future damages.

Because the trial court made no findings in this regard, we cannot ascertain the basis upon which prejudgment interest was allowed for each plaintiff or how it was calculated. On remand, if similar instructions are given and plaintiffs are awarded similar damages, the trial court should make appropriate findings to facilitate effective appellate review. See *People in Interest of R.A.,* 937 P.2d 731 (Colo.1997).

### III.

■ Greeley Gas asserts the court further erred in refusing to transfer venue, failing to remove a juror for cause, and entering judgment for certain damages not supported by evidence in the record. With regard to the transfer of venue, the passage of four years constitutes a sufficient change in the circumstances that we conclude it is unnecessary to address the issue on this appeal. Because the other two issues are not likely to arise again in any new trial, we likewise decline to address them.

The judgment is reversed, and the cause is remanded for a new trial pursuant to this opinion.

CRISWELL and NEY, JJ., concur.