## No. 19,632.

KENNETH L. HINSHAW, EXECUTOR OF THE ESTATE OF
JONATHAN D. HINSHAW, DECEASED *v.* CORA MARIE
HOOK HINSHAW, ET AL.

(365 P. [2d] 815)

Decided October 23, 1961.   Rehearing denied November 13, 1961.

Mr. FRANK G. STINEMEYER, Mr. J. WESLEY KETTLE-
KAMP, for plaintiff in error.

Mr. ROBERT G. FREDRICKSON, Messrs. LATTIMER and
ROBB, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THE parties appear here in the same order as they
appeared in the trial court and will be designated as they
there appeared or by name.

The original plaintiff in the action was Dr. Jonathan
D. Hinshaw. Two claims for relief were set forth in his
complaint. The first, asserted against defendant Cora
Marie Hook Hinshaw, sought cancellation of two deeds,
one to a residence property in Canon City, Fremont
County, Colorado; the other to a ranch property in
Custer County, Colorado. The grounds for cancellation
set forth under the first claim were: (1) Fraud, design
and undue influence in the procurance of the deeds
from Dr. Hinshaw; (2) Breach of agreement to com-
mence co-habitation after marriage with Dr. Hinshaw
which was the consideration for said deeds. The second
claim sought cancellation of a deed against both Cora
Marie Hook Hinshaw and her sister, Lela Flint, on the
ground of fraud and conspiracy in depriving the plaintiff
of his properties and to defraud him of his life interest
in the residence.

It was alleged inter alia that "the plaintiff was at the
time of entering into said marriage ceremony with said
defendant of advanced age, infirm and in need of con-
siderate care and companionship." On August 19, 1959,
before filing of the answer, Jonathan D. Hinshaw died,

and upon motion Kenneth L. Hinshaw, his son and Executor, was substituted as plaintiff.

The case was tried to the court on June 20, 1960. At the conclusion of the plaintiff's case defendants moved to dismiss. After argument by both parties the court denied the motion, and the defendants thereupon rested and renewed their motion to dismiss. The court then took the matter under advisement. Subsequently the defendant's motion to dismiss was granted, the court holding that plaintiff had failed to sustain the burden of proof. From the judgment of dismissal plaintiff brings this writ of error.

The trial court made numerous findings of fact and we review them here in summary fashion. On March 11, 1954, Elizabeth Hinshaw, the first wife of Jonathan and mother of the plaintiff Kenneth, passed away. At that time Jonathan was the owner of a residence in Canon City, Colorado, and of two ranches located in Custer County, Colorado. Following the death of his wife, Elizabeth, the plaintiff placed all this property in joint tenancy in the names of himself, his son Kenneth, and his daughter-in-law Alice Rowena Hinshaw, wife of Kenneth. On July 29, 1955, the residence property in Canon City was conveyed back to Jonathan by Kenneth and Alice, and on August 2, 1955, they re-conveyed one of the ranch properties in Custer County, Colorado, to Jonathan. During this period following the death of the first Mrs. Hinshaw, defendant Cora Marie Hook became interested in Jonathan. It appears that at the time of these transactions Jonathan was in his eighties.

On July 8, 1956, Jonathan and Cora Marie motored to Raton, New Mexico, and were married there on July 9th. Immediately after the ceremony they returned to Canon City and upon their arrival Jonathan returned to his residence, and Cora Marie returned to her residence. This arrangement continued until the middle of October 1956, although, according to the plaintiff's evidence, they

did not in fact live together until the first part of December 1956.

On November 1, 1956, Jonathan executed a deed conveying his residence property in Canon City to Cora Marie Hook Hinshaw. At the same time an agreement was made between Jonathan and Cora Marie providing for the retention of a life estate in the property so conveyed in Jonathan, and that he would pay all taxes and other expenses of the property. While the deed was recorded the same day, i.e., November 1, 1956, the agreement was not recorded until September 27, 1957, almost a year later. There was also acknowledged on November 1, 1956, a deed by Jonathan conveying certain ranch property in Custer County, Colorado, to Cora Marie. Also on November 1, 1956, there was acknowledged an agreement by which Dr. Hinshaw would not make any claim to any property belonging to Cora Marie. This agreement was not recorded by Cora Marie until February 4, 1958.

During August 1957 defendant Lela Flint, a sister of Cora Marie, came to make her home with Cora Marie and Jonathan. On October 3, 1957, in consideration of a recited $100.00 cash Cora Marie executed a deed to Lela Flint conveying to her the residence property formerly belonging to Jonathan. Sometime in August or September 1957 Jonathan left the residence, and on September 19, 1958, filed an action for divorce. He subsequently dismissed that action and on March 26, 1959, this action was filed.

The trial court also found that the plaintiff had not sustained the burden of proof as to the averments of fraud, nor the contention, raised during the trial, that there was a confidential relationship between Jonathan and Cora Marie so as to make it incumbent upon her to show that the said transactions were fair and were performed without any undue influence. The court evidently concluded from the plaintiff's evidence that the burden of proof had been met by defendants (though

they put in no evidence) and that a satisfactory explanation of the reasons for transferring the properties had been given. Upon reviewing the record we find ourselves in disagreement with this conclusion of the learned trial court. The facts established were in our view sufficient to require the defendants to go forward with proof to overcome the presumptions and inferences arising from the facts established by plaintiff.

It is true, as defendants urge, that the burden of proof to establish fraud and undue influence is upon him who asserts it, and that it must be established by clear and satisfactory evidence. However, we have held that fraud in some situations may be presumed from the relationship, or from the circumstances and conditions of the contracting parties. This doctrine is designed to prevent one from taking covert advantage of the weakness or necessity of another. See *House v. Smith* (1947), 117 Colo. 305, 187 P. (2d) 587.

Eighteen witnesses were called by the plaintiff, including the defendants Cora Marie Hook Hinshaw and Lela Flint who were called as adverse witnesses. Cora Marie testified, in explanation of the conveyance of the residence property from herself to Lela Flint, that this was pursuant to an agreement among the three of them. The asserted agreement was that in consideration of Lela Flint caring for the two Hinshaws in their declining years they would convey the property to her, although the evidence is not clear as to whether Jonathan participated in that conveyance or received any of the consideration involved. This property was valued in excess of $25,000.00. Cora Marie's testimony, when called as an adverse witness, was vague and evasive. Her repeated response to pertinent questions was "I don't remember," frequently interposing such response before counsel could complete his question. She also testified that pertinent letters relating to various transactions had been destroyed by her.

It appears that although the parties were married on

July 9, 1956, it was not until December 3rd that Cora Marie inserted a public announcement in the local newspaper. She testified that the arrangement of living apart until October 1956 was mutually agreed to between herself and Jonathan. She stated that it was for the purpose of taking care of things at her home, but she also acknowledged as correct her statement in her deposition that it was "Because people were guessing whether we were married or not and we just was having fun about it." It appears that it was upon completion of her moving into the doctor's residence that she caused the notice to be inserted in the paper announcing their marriage.

A reading of the record discloses that Cora Marie, who was a very able and intelligent woman, had a plan to marry Jonathan, who was a very elderly, well-to-do man, who needed both companionship and housekeeping assistance; that after the marriage she would not live with her husband for several months during which time he became distraught and two valuable pieces of real estate were conveyed by him to her with only nominal consideration, one of which she quickly attempted to place out of reach by conveying to her sister for a mere $100.00; it shows that she had at least one of the various instruments drafted and attended to the execution of a disclaimer by her husband of his right to inherit from her; it shows her disdainful attitude towards her husband after the property transfers were made and finally it shows his being driven from what had been his own home. The record does not show that Cora Marie married Jonathan, as she asserts, to provide him a home and desired companionship and assistance.

The beginning of Cora Marie's scheme and design appears from the testimony of witness George W. Batchelor, who described a later destroyed letter he had seen which was written by her to a mutual friend in 1954 after the first Mrs. Hinshaw's death. This pertinent testimony is:

"Q. What did this letter state that was signed by Cora

Marie Hook? A. In the letter she made the statement that Mrs. Jean Bauer was or had been keeping house for Dr. Hinshaw after his wife's death. And she says, 'I've gotten rid of her. I understand that her — his stepsister is coming to be with him for awhile.' She says, 'It won't take me long to brush her off. I have the inside track with the doctor and I intend to keep it.'"

■ The record also discloses a substantial inequality between the parties with weakness on Jonathan's side and domination on Cora Marie's side. Thus the burden of proof shifted to the two defendants to prove that the transactions were in fact fair, just and reasonable and not fraudulent as asserted by plaintiff. See *Zink v. Carlile* (1952), 126 Colo. 208, 248 P. (2d) 306, and compare *Pomeroy's Equity Jurisprudence* (5th Ed.), Vol. 3, page 853, et seq. Section 962 b on "Constructive Fraud-Inferred, etc."

■ As was said in *Dittbrenner v. Myerson* (1946), 114 Colo. 448, 167 P. (2d) 15:

"In such a situation the facts are amply sufficient to bring the case under the third class of fraud set out by Lord Hardwicke in the classic case of *Earl of Chesterfield v. Janssen,* 2 Vest. Sr. 125, 155: Fraud ' * * * which may be presumed from the circumstances and condition of the parties contracting: * * * to prevent taking surreptitious advantage of the weakness or necessity of another * * *.' The essential condition precedent to the applicability of this doctrine is an 'inequality' between the parties; there must be weakness on the one side and advantage taken of that weakness on the other, and 'It must appear that the dominant party either brought about the unevenness in the conditions, or, finding it ready to his hand, utilized and traded on it to extract from the servient party a gift or contract which he would not otherwise have made.' Bower on Actionable Non-Disclosure, p. 390, §428. Where such a relation subsists between two persons, 'The law presumes in favour of the servient party, against the dominant party, (1) that

the relation placed the dominant party in a position to exercise influence and dominion over the servient party; (2) that such influence and dominion operated upon, and procured, the transaction; and (3) that the influence was an improper and unfair, or (to use the accepted phrase) an "undue influence." Bower on Actionable Non-Disclosure, p. 363, §405. ' * * * when the relative position of the parties is such as prima facie to raise this presumption, the transaction cannot stand unless the person claiming the benefit of it is able to repel the presumption by contrary evidence, proving it to have been in point of fact fair, just, and reasonable.' *Aylesford v. Morris,* 8 Ch. App. 484, quoted in Bower on Actionable Non-Disclosure, p. 391, §428.

'The principle on which a court of equity acts in relieving against transactions on the ground of inequality of footing between the parties is not confined to cases where a fiduciary relation is shown to exist, but extends to all the varieties of relations in which dominion may be exercised by one over another, and applies to every case where influence is acquired and abused, or where confidence is reposed and betrayed.' *Sears v. Hicklin,* 13 Colo. 143, 148, 21 Pac. 1022, quoting from Kerr, Fraud & Mistake 183."

As mentioned earlier the defendants rested at the conclusion of plaintiff's case and their motion to dismiss was then granted. Since they had the burden of proof and had full opportunity to establish their defense by whatever evidence they deemed proper, yet chose not to do so, upon reversal they are not entitled to a new trial. *Arnold v. Abernethy* (1957), 134 Colo. 573, 307 P. (2d) 1106.

Plaintiff urges several other grounds for reversal, but in view of our conclusion it is not necessary to discuss them.

The judgment is reversed and the cause remanded with directions to enter judgment in favor of the plaintiff.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur.