483 P.2d 398 (1971)
The FIRST NATIONAL BANK OF DENVER and Teena Rudolph as Co-Executors of the Estate of Belle Groussman, and Teena Rudolph, individually, Plaintiffs in Error,
v.
Stephen W. GROUSSMAN and Alan Groussman, Individually and as Co-Executors of the Estate of Ernest Groussman, and the Puritan Pie Co., a Colorado corporation, Defendants in Error.
No. 70-607, (Supreme Court No. 24477.)
Colorado Court of Appeals, Div. 1.
February 9, 1971.
Rehearing Denied March 2, 1971.
Certiorari Granted April 19, 1971.
*399 Hoffman, Goldstein & Armour, Abe L. Hoffman, Denver, for plaintiffs in error.
Sheldon, Bayer, McLean & Glasman, George M. Allen, Denver, for defendants in error.
Selected for Official Publication.
COYTE, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and subsequently transferred to the Court of Appeals under authority vested in the Supreme Court.
The plaintiffs in error, First National Bank of Denver and Teena Rudolph, were plaintiffs below and shall be referred to in the same manner or by name, as will the defendants in error.
The plaintiff Teena Rudolph was the daughter of the decedent, Belle Groussman. By an agreement dated September 19, 1958, the decedent and Teena agreed to purchase a house in Denver as joint tenants. Decedent agreed to pay approximately $22,000 as down payment on the house and Teena agreed to assume payment of the mortgage amounting to approximately $14,000. The parties consummated the purchase of the property and the deed was recorded.
In September 1965 Ernest Groussman, son of the decedent Belle Groussman, took his mother to an attorney's office where she discussed her affairs and said she wished to convey her interest in the property to her son Ernest. However, Ernest declined and she thereafter decided to convey her interest to Stephen and Alan Groussman, sons of Ernest Groussman. A quitclaim deed naming these two as grantees was executed on October 1, 1965, reserving a life estate interest in the property in Belle Groussman. Shortly thereafter, Belle Groussman fell, broke her hip, and died from the injury.
Plaintiff Teena Rudolph brought suit against Ernest, Stephen and Alan Groussman, seeking to have the quitclaim deed declared void, alleging it was procured through the exercise of undue influence. Ernest Groussman died after the filing of this suit and the defendants Stephen and Alan Groussman were substituted by reason of their being the executors of their father's estate.
The First National Bank of Denver and Teena Rudolph, as co-executors of Belle Groussman's estate, also brought suit against the same defendants plus the defendant Puritan Pie Co., which is owned by the defendants Alan and Stephen Groussman. The plaintiffs in this suit claim that a certain promissory note executed by Puritan Pie Co. and payable to the decedent, Belle Groussman, had been assigned to the defendants at the same time as her conveyance of the interest in the house and that the assignment was void. Plaintiffs asserted that the assignment had been obtained by undue influence.
The defendants Stephen and Alan Groussman counterclaimed against plaintiff Teena Rudolph, claiming that they had become tenants in common with the plaintiff *400 upon the death of Belle Groussman by reason of the quitclaim deed and that therefore they were entitled to one-half of the income or fair rental value of the property.
The cases were consolidated and tried before the court. At the conclusion of plaintiffs' evidence, the defendants moved for a directed verdict, which was granted. The court found that the conveyances were freely made by the decedent, Belle Groussman, and that neither the defendants nor the decedent Ernest Groussman had exercised any undue influence so as to cause the decedent Belle Groussman to convey her interest in the land or assign the promissory note to the defendants. The court further held that the defendants were entitled to one-half of the fair rental value of the property minus certain payments made by the plaintiff Teena Rudolph on the property.
Both sides to this dispute have appealed the decision entered below and we will discuss the position of each in turn.
The first argument of plaintiffs in error is that the defendants had the burden of proof; and that defendants failed to produce any evidence which would sustain a judgment in their favor; and therefore it was error to dismiss plaintiffs' complaint at the conclusion of their evidence.
In support of their proposition that the burden of proof was upon the defendants in the instant case, plaintiffs point to Hinshaw v. Hinshaw, 148 Colo. 262, 365 P.2d 815; Zink v. Carlile, 126 Colo. 208, 248 P. 2d 306; Hilliard v. Shellabarger, 120 Colo. 441, 210 P.2d 441, as their authority. The general rule to be found in these cited cases is that undue influence or fraud may be presumed against a person occupying a fiduciary relationship with a decedent, or against a person under other circumstances established where there is a close and confidential relationship. The burden under these circumstances is upon the defendants to show that no such undue influence or fraud exists. The key factor in these cases is that the defendant was in a fiduciary relationship or, as in Hinshaw, supra, occupied a close, dominant position to a weak and servient person.
The facts in the instant case do not establish the existence of a fiduciary relationship between the decedent, Belle Groussman, and the defendants. Nor do they establish the existence of a particularly close and confidential relationship such as suggested in Hinshaw, supra.
The facts do disclose that the decedent was ninety-six years old, and lived with her daughter, Teena Rudolph, who handled all business transactions of the decedent. Decedent's son Ernest was shown to have visited her on occasion and had on occasion been domineering and abusive. He had taken her to the attorney's office at the time she conveyed the property in question to Ernest's sons, Stephen and Alan Groussman.
In order for plaintiffs to raise the rebuttable presumption of undue influence or fraud in procuring decedent's signature on the deed and assignment, it is necessary for them to establish the existence of a close, confidential or fiduciary relationship between the defendants and the decedent. Only upon such a showing would the burden of going forward with the evidence be shifted to the defendants. White v. White, 149 Colo. 166, 368 P.2d 417; Bohl v. Haney, 28 Colo.App. , 470 P.2d 603. The basic facts produced by plaintiffs, however, merely disclose the existence of a blood relationship between the defendants and the decedent, and that Ernest Groussman may have been abusive on occasion while visiting his mother.
This fails to establish the existence of such relationship as would justify shifting to the defendants the burden of going forward with the evidence, and therefore the dismissal without requiring defendants to produce evidence was not error. White v. White, supra.
Furthermore, we find that even if the burden were upon the defendants to prove that the execution of the deed and assignment were free of fraud and undue *401 influence, there was sufficient evidence before the court to sustain the findings that the defendants were not guilty of either.
Generally speaking, when defendant moves for a directed verdict in a trial to a jury, the trial court must view the evidence in the light most favorable to plaintiff's position. However, when passing upon a motion for a directed verdict where the court is also the trier of fact, then at the conclusion of plaintiffs' evidence, the trial judge may weigh the evidence, determine issues of credibility and reach all permissible inferences, including those favoring defendants. C.R.C.P. 41; Rubens v. Pember, Colo., 460 P.2d 803.
The trial court here made definite findings that the decedent freely and voluntarily executed these instruments. In so finding, the court relied heavily upon the testimony of the attorney drafting the instruments who stated that, according to his observations after two lengthy periods of conversation with the decedent, he was convinced that she knew what she was doing and did so freely and voluntarily. This was buttressed by the decedent's doctor who testified that the decedent was quite capable of lucid and reasonable behavior, although on occasion she did become confused.
Undue influence in Colorado Jury Instruction 23:15 is defined as follows:
"A person has a right by fair persuasion or argument to induce another person, such other person being of sound mind at the time, to favor him or to contract in his favor, or to give him property; and a transaction under such influence will not be invalid on that account. To invalidate a transaction because of undue influence, the influence must be such as to destroy the free choice of the person alleged to have been influenced."
If the court finds, as it did here, that the decedent did not act under coercion or instruction, but conveyed the interest of her own free will, then undue influence is not an existent fact and defendants need not prove they did not exercise such influence.
[4] Another argument raised by plaintiff Teena Rudolph concerns the contract entered into between the plaintiff and the decedent in 1958, whereby each party agreed to own the property jointly. By this contract, plaintiffs argue that the decedent, Belle Groussman, was without authority to convey her interest to the defendants.
Our recording statute, C.R.S. 1963, 118-6-9, provides:
"* * * No such instrument or document shall be valid as against any class of persons with any kind of rights, except between the parties thereto, and such as have notice thereof, until the same shall be deposited with such recorder."
This agreement was not recorded and there is no evidence that defendants had actual notice of its existence; and further the agreement did not limit the right of decedent to convey her interest. The only recorded instrument on the property at the time of conveyance was the joint tenancy deed. The law is clear that upon conveyance by one joint tenant to a third party, the remaining joint tenants become tenants in common with that third party. 20 Am.Jur.2d Co-tenancy and Joint Ownership § 16.
Plaintiffs also contend that the quitclaim deed was in reality a testamentary device and void because of failure of decedent to comply with the statutory provisions requiring two witnesses to witness decedent's signature to the deed. We do not find this instrument to be testamentary in character and therefore do not find it void for failure to comply with the statutory provisisions relating to wills.
Neither of the cases cited by plaintiffs is controlling here. In Urbancich v. Jersin, 123 Colo. 88, 226 P.2d 316, an instrument directing that a savings account be delivered to decedent's nieces and nephews upon the decedent's death was held void, and in Dunham v. Armitage, 97 Colo. 216, 48 P.2d 797, an instrument purporting to convey property, but retaining for the grantor not *402 only the right to a life estate but also the right to revoke the instrument at will was declared void. The common thread in each of these cited cases was that the interests of the grantee or transferee would only take effect upon the death of the transferor. In both instances the transferor retained not only the full use and possession of the property, but more importantly, retained the right to terminate completely the interest of the grantee or transferee at any time before the grantor's death.
By the quitclaim deed here, the decedent retained a life estate in her interest in the property. The interest obtained by the defendants was an indefeasibly vested remainder which was not revocable by the grantor. C. Smith, Survey of the Law of Real Property 135. The instrument did not, as in the cases cited by plaintiffs, vest the defendants with their interest in the property only upon the death of the grantor, but instead granted them a present, vested, non-revocable interest in the property at the time of the execution of the deed. There is no requirement that a deed comply with the statutory requirements of a will.
The final argument of plaintiffs, and defendants' cross appeal may be discussed together. These arguments concern the trial court's order which held that the defendants as tenants in common were entitled to one-half of the fair rental value of the property minus the mortgage payments made by plaintiff Teena Rudolph. Defendants argue that the plaintiff is not entitled to deduct her payments from the rent due, and the plaintiff argues that defendants are not entitled to one-half of the fair rental value of the property.
It was stipulated by the parties that the fair rental value of the property was $237.50 per month, which multiplied by the number of months having lapsed from the date of filing until final judgment was entered equaled $8,725. The trial court then determined that during this same period, plaintiff Teena Rudolph paid $7,381.58 in taxes, mortgage payments and necessary repairs for the property, which deducted from the fair rental value of $8,725, left $1,343.42. Dividing this by two, the court determined that the plaintiff owed $671.71 to the defendants.
Since it has been determined that the defendants were tenants in common with plaintiff, we must agree with the trial court's conclusion that, from the date of filing, the complaint, in which plaintiff claimed the entire property in her own right, amounted to an ouster of defendants from the common property, entitling defendants to one-half of the reasonable value of its use and occupation. Hed v. Pullara, 128 Colo. 244, 261 P.2d 509. The reasonable value having been stipulated to by plaintiffs, the award of one-half of this amount to the defendants does not constitute error on the part of the trial court.
Similarly, we find no error in the trial court's deducting from the rent due, the mortgage, tax and reasonable repairs made upon the property. Defendants cite the case of Keithline v. Keithline, 106 Colo. 400, 105 P.2d 1086, and Wolfe v. Childs, 42 Colo. 121, 94 P. 292, as authority for their argument that they are not liable for a pro rata share of these expenditures. But, in both of the cited cases, one tenant in common was attempting to saddle his co-tenant with a share of the costs of improving the property, not merely preserving it, such as occurred here.
In this case, a different situation appears since the expenditures made were not for the purpose of improving, but rather to preserve and protect the property. If plaintiff had failed to pay the mortgage or tax assessments due, all interests of both tenants might have been lost. Under such circumstances, we find that the trial court did not err in requiring defendants to contribute their fair share of the amount paid out by their fellow co-tenant who was merely preserving and protecting the property for them.
Judgment affirmed.
DWYER and ENOCH, JJ., concur.