Linda **LOUGHRIDGE**, William P. Loughridge, Jerry Hannah, Nancy Hannah, Donna L. Garth, Ronald Hochfield, and Marsha Hochfield, Balaju, L.L.C., a Colorado limited liability company, Dale V. Kesler, Judith A. Kesler, Rosemarie Glas, Christopher W. Congalton, Susan T. Congalton, Claire Beck, Dr. Calvin Daks and Carol Daks, Justine Parker, Howard G. Parker, Janet Sutterley, Randy Kil-

gore, Sue Taylor, Darrell Taylor, Janet G. Upton and Charles R. Upton, Robert B. Grossman, Gale K. Grossman, Mark A Lathrop, Susan K. Lathrop, Janice C. Meyer, Gary Q. Barnett and Julia Watson Barnett, Robert S. Julian and Corey Bender Mindlin, Addison L. Piper, Richard C. Raczuk, Claudette L. Raczuk, Thomas A. Hardilek, Sandra J. Hardilek, and Fuyu Farms, a Colorado general partnership, Plaintiffs,

v.

GOODYEAR TIRE AND RUBBER COMPANY, an Ohio corporation, and Chiles Power Supply Company, Inc., d/b/a Heatway Radiant Floors and Snowmelting, a Missouri corporation, Defendants.

No. CIV.98–B–1302, CIV.98–B–1884, CIV.98–B–2118, CIV.98–B–227, CIV.98–B–345, CIV.98–B–488, CIV.00–B–388.

United States District Court, D. Colorado.

March 13, 2002.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

In this diversity action Plaintiffs bring suit in seven consolidated cases under Colorado state law against Defendants Goodyear Tire and Rubber Company ("Goodyear") and Chiles Power Supply d/b/a Heatway Radiant Floors and Snowmelting ("Heatway"). Goodyear and Heatway bring cross-claims against each other. Goodyear moves for summary judgment on all claims against it. The motion is adequately briefed and oral argument would not materially aid its resolution. For the following reasons, I grant Goodyear's motion for summary judgment in part and deny it in part.

### I. Background

Heatway sells parts for hydronic radiant heating systems. These systems circulate warm fluid under indoor flooring as an alternative to conventional heating systems, or under driveways and sidewalks to melt snow and ice. Goodyear manufactured and sold a hose, the Entran II, used in Heatway's radiant systems. Colorado was a major market for these systems.

In 1992 Heatway began receiving complaints from homeowners about hardening of the Entran II hose and leaks in the installed systems. Believing that the Entran II hose was causing the leaks, Heatway stopped paying Goodyear for hose shipments. As a result, Goodyear sued Heatway in 1997 in the United States District Court for the District of Ohio (the "Ohio action"). Heatway filed a counterclaim alleging that the hose was defective. Goodyear had by this time manufactured 25,000,000 feet of hose. The Ohio Action went to trial on the issue of the merchantability of all 25,000,000 feet. The jury returned a verdict for Goodyear.

Following the loss against Goodyear, Heatway declared bankruptcy. A bankruptcy plan was approved on August 18, 2000. Heatway's insurers have received a channeling injunction limiting their liability to $2,900,000, paid into the bankruptcy estate. Claims must be made against those funds prior to August 2002. Because several Plaintiffs have been exempted from this provision of the bankruptcy plan, Heatway remains a party to the Colorado suits.

Between 1998 and 2000 a number of suits were filed in Colorado state and federal courts by homeowners against Goodyear, Heatway, or both. Seven of these cases are currently pending in this Court. These cases have all been assigned to me, and have been consolidated for discovery purposes. The suits allege breach of implied and express warranties, negligence, strict product liability, consumer protection claims and civil conspiracy.

### II. Motion for Summary Judgment

The purpose of a summary judgment motion is to assess whether trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir.1995). Fed. R.Civ.P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, that it believes demonstrate the absence of genuine issues for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. *See* Fed.R.Civ.P. 56(e); *Otteson v. United States,* 622 F.2d 516, 519 (10th Cir.1980). These facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

Goodyear moves for summary judgment on Plaintiffs' claims and Heatway's cross-claims. I consider each in turn.

### A. Plaintiffs' Claims

All seven Complaints bring claims for breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence, manufacturing defect, design defect, violation of the Colorado Consumer Protection Act, and civil conspiracy. The Piper, Balaju, and Grossman Complaints bring additional claims for failure to warn and fraudulent concealment. Goodyear moves to dismiss Plaintiffs' contract claims, tort claims, Colorado Consumer Protection Act claims, and civil conspiracy claims. I consider each in turn.

### 1. Contract Claims

All Plaintiffs bring claims for breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose against Goodyear. Each of these claims is based on the Colorado Uniform Commercial Code (UCC). Goodyear first moves to dismiss the UCC claims on the ground that they are barred by the applicable statute of limitations.

■■■ Under the Colorado UCC, a claim for breach of warranty must be brought within three years. *See* Colo.Rev. Stat. § 4-2-725; 13-80-101. Section 4-2-725 provides:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made; except, that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

*Id.* at § 725(2). "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Colo. Rev.Stat. § 4-2-313(1)(a). "The question of the existence of a warranty and whether that warranty was breached is ordinarily one for the trier of fact." *Stroh v. Am. Recreation & Mobile Home Corp. of Colo.,* 35 Colo.App. 196, 530 P.2d 989, 993 (1975); Colo.Rev.Stat. § 4-2-313 cmt. 3. Where a buyer alleges the existence of oral warranties prior to execution of the written contract, as well as conduct following the sale such as a commitment to pay for certain repairs which tend to show that warranties were in fact made, there is a material issue of fact for resolution. *See O'Neil v. Int'l Harvester Co.,* 40 Colo.App. 369, 575 P.2d 862, 865 (1978).

■ The parties agree that the three year statute of limitations applies, but disagree as to the accrual date. Goodyear argues that the breach, if any, occurred at delivery. Because the radiant systems were all installed three years or more prior to the filing of the suits, Goodyear argues that the claims must be dismissed. I disagree. Here, Plaintiffs have provided sufficient evidence of specific oral promises made by Goodyear regarding the longevity of the Entran II hose which could be construed as explicit warranties of future performance. *See* Plaintiff's Exhibits 2; 3 at 62–63, 69; 20 at 2767. They also produce evidence that these promises became part of the basis of the bargain, and that Heatway would not have chosen Goodyear as a manufacturer without them. *See* Plaintiffs' Exhibit 21 at 88–89. Thus, factual issues exist and it is inappropriate to grant summary judgment.

Goodyear next argues that all claims based on the UCC should be dismissed because the transaction did not involve a sale of goods but rather a fixture of real property. Article 2 of the UCC applies only to sales of goods. *See* Colo.Rev.Stat. § 4–2–102(1).

> 'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale … 'Goods' also includes … other identified things attached to realty as described in the section on goods to be severed from realty (section 4–2–107).

Colo.Rev.Stat. § 4–2–105(1). The terms of section 4–2–107 do not apply here.

■ Goodyear argues that because the Entran II was used in the construction of radiant systems which were then covered by flooring or cement, the hose became a fixture of real property and not a good for purposes of the UCC. I disagree. The Plaintiffs have made clear that they are suing as third-party beneficiaries to the contract between Goodyear and Heatway for sale of the hose. *See* Plaintiffs' Opposition at 20. Thus, the Entran II was an existing and identifiable thing which was movable at the time of identification to the contract for sale, making it a "good" for purposes of the UCC. *See* Colo.Rev.Stat. § 4–2–105(1)–(2). Further, the Colorado Courts have held that separate *units of goods* which are later incorporated into a home or other building are still goods at the time that they are procured for installation. "The fact that [materials sold] might later be installed in the … home and assume the character of fixtures does not undermine the primary purpose of the contract as one for a sale of goods." *Colorado Carpet Installation, Inc. v. Palermo,* 668 P.2d 1384, 1389 (Colo.1983); *Thomas v. Bove,* 687 P.2d 534 (Colo.Ct.App.1984) (installation of heating system in home); *Regents of Univ. of Colo. v. Pacific Pump & Supply, Inc.,* 35 Colo.App. 36, 528 P.2d 941 (1974) (installation of standby emergency electric power plant, consisting of an engine and generator); *Cherokee Inv. Co. v. Voiles,* 166 Colo. 270, 443 P.2d 727 (1968) (installation of a water softener in a home). I therefore conclude that the Entran II hose is a "good" for purposes of the Colorado UCC, and deny Goodyear's motion for summary judgment on Plaintiffs' contract claims.

### 2. Tort Claims

All Plaintiffs assert strict liability claims of manufacturing defect and design defect, as well as negligence. Seven of the Plaintiffs assert a strict liability claim based on failure to warn and fraudulent concealment.

■ Goodyear first moves to dismiss all tort claims based on the economic loss doctrine. The economic loss rule prohibits a negligence claim when the breach of duty is contractual and the harm incurred

is the "result of failure of the purpose of contract." *See Town of Alma v. Azco Constr., Inc.,* 10 P.3d 1256 (Colo.2000); *Grynberg v. Agri Tech, Inc.,* 10 P.3d 1267 (Colo.2000) (expressly adopting the economic loss rule in Colorado); *Jardel Enters., Inc. v. Triconsultants, Inc.,* 770 P.2d 1301 (Colo.Ct.App.1988). Under this rule, a party suffering purely economic loss from the breach of an express or implied contractual duty is barred from asserting a tort claim for such a breach, absent an independent duty of care under tort law. *See Town of Alma,* 10 P.3d 1256; *Cissell Mfg. Co. v. Park,* 36 P.3d 85, 90 (Colo.Ct. App.2001). In order to determine whether the rule applies, the court must "focus on the source of the duty alleged to have been violated." *Town of Alma,* 10 P.3d at 1263. The Colorado Supreme Court recognized in *Alma* that some relationships "by their nature automatically trigger an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship." *Id.* (citations omitted). Further "certain common law claims that sound in tort and are expressly designed to remedy economic loss may exist independent of a breach of contract claim." *Id.* (citations omitted).

■ Here, the claims are based upon strict product liability, negligence, and fraudulent concealment. The *Alma* court recognized common law fraud and negligent misrepresentation as claims sounding in tort which are expressly designed to remedy economic loss and may exist independent of a breach of contract claim. *See id.* (citing *Brody v. Bock,* 897 P.2d 769, 776 (Colo.1995) (common law fraud claim is based on violation of a duty independent of contract)); *Keller v. A.O. Smith Harvestore Prods., Inc.,* 819 P.2d 69, 73 (Colo. 1991) (negligent misrepresentation is a tort claim based "not on principles of contractual obligation but on principles of duty and reasonable conduct."). These same principles apply to the negligence and fraudulent concealment claims brought here. Likewise, strict products liability imposes a duty on the manufacturer of a product, outside any contractual duty, to act reasonably in the design, manufacture, and sale of the product. *See Halliburton v. Pub. Serv. Co. of Colo.,* 804 P.2d 213, 216–17 (Colo.Ct.App.1990). Therefore, a duty is imposed upon Goodyear here, outside of its contractual duties to Heatway and third-party beneficiaries, to act reasonably in the design, manufacture, and sale of the Entran II. I thus conclude that the economic loss rule does not preclude Plaintiffs' tort claims.

■ Goodyear next argues that Plaintiffs' strict liability claims should be dismissed because Plaintiffs do not allege personal injuries or damage to property other than the Entran hose itself or the real property into which the Entran was incorporated. I again disagree. Goodyear's argument is based upon *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In *East River,* the Supreme Court held that although admiralty law incorporated product liability principles, there was no cause of action in tort under either negligence or strict liability for damage caused when a product malfunctions and causes purely economic loss through damage to the product itself. *See id.* at 876, 106 S.Ct. 2295. *See also Town of Alma,* 10 P.3d at 1261 (citing *East River* in explaining the source of the economic loss rule, for when "a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong."). However, in *Hiigel v. Gen. Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975), the Colorado Supreme Court adopted § 402A(1) of the Restatement (Second) of Torts. That section provides: "One who sells any product in a defective condition

unreasonably dangerous to the user or consumer or to his property is subject to liability *for physical harm* thereby caused *to the ultimate user* or consumer, *or to his property* . . . ." (emphasis added). The *Hiigel* court concluded that "[a]lthough there is a split among the jurisdictions as to whether the damage to the product sold is covered under the doctrine of strict liability, we think the wiser view is that it is." *Id.* at 989.

Here the Plaintiffs have alleged property damage as a result of the allegedly leaking hoses. Under *Hiigel,* damage to the hose as well as to the property is covered by strict liability. Further, even if the *Hiigel* rule did not apply, I have already determined that the hoses did not become part of the realty for purposes of this inquiry. Therefore, Plaintiffs allege physical harm to property other than the product itself and summary judgment on this ground is inappropriate.

 Goodyear next argues that Plaintiffs' fraudulent concealment claim must fail because Plaintiffs never dealt directly with Goodyear. The elements of fraudulent concealment are: (1) concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *See Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458 (1937); *Ackmann v. Merch. Mortgage & Trust Corp.,* 645 P.2d 7 (Colo.1982). Fraud may be inferred from circumstantial evidence. *See, e.g., Zimmerman v. Loose,* 162 Colo. 80, 425 P.2d 803 (1967); *Hinshaw v. Hinshaw,* 148 Colo. 262, 365 P.2d 815 (1961); *In re Holmes' Estate,* 98 Colo. 360, 56 P.2d 1333 (1936); *Wilbourn v.*

*Mostek Corp.,* 537 F.Supp. 302 (D.Colo. 1982). Direct evidence of reliance is not required. *See Goodspeed,* 100 Colo. 470, 68 P.2d 458. Nor is privity a requirement because the fact that a defendant does not sell its product directly to the plaintiff does not insulate a defendant from liability for its failure to disclose that which in equity and good conscience should have disclosed. *See Schnell v. Gustafson,* 638 P.2d 850, 852 (Colo.Ct.App.1981) (citing *Goodspeed* ).

 Here, there is a genuine issue of material fact as to whether Goodyear engaged in fraudulent conduct. There is evidence that Goodyear approved marketing materials knowing that they included false statements regarding the Entran II's longevity, *see* Exhibit 23 at 174–80, 187–90, and knowing that the materials would reach homeowners. *See* Exhibit 22. There is also evidence that Goodyear purposely reported that a fluid sample sent to it for testing was free from rubber particles, despite the fact that degraded rubber was purposely placed in the sample to test Goodyear's veracity. *See* Exhibit 3. Goodyear placed information about the Entran II on its website with the intention that homeowners and installers view the site, insisting that hardening and leaks were the result of improper system design, installation, or maintenance rather than an inherent problem with the Entran II. *See* Exhibit 17. Further, there is evidence that Goodyear helped fund and participated in trade shows with Heatway to promote the Entran II. *See* Exhibit 24. At the same time Goodyear's employees were expressing their concerns about the Entran and possible liability for its manufacture. *See* Exhibit 1. I therefore conclude that summary judgment is inappropriate on Plaintiffs' fraudulent concealment claims.

*B. Colorado Consumer Protection Act*

 Goodyear next moves for summary judgment on Plaintiffs' Colorado Consumer Protection Act ("CCPA") claim. The CCPA is a remedial statute intended to deter and punish deceptive trade practices committed by businesses in dealing with the public. *See People ex rel. Dunbar v. Gym of Am., Inc.*, 177 Colo. 97, 493 P.2d 660, 667–68 (1972); *People ex rel. MacFarlane v. Alpert Corp.*, 660 P.2d 1295, 1297 (Colo.Ct.App.1982). The CCPA's broad legislative purpose is "to provide prompt, economical, and readily available remedies against consumer fraud." *W. Food Plan, Inc. v. Dist. Court*, 198 Colo. 251, 598 P.2d 1038, 1041 (1979). This purpose is achieved through injunctions and civil penalties such as treble damages and attorney fees. *See* Colo.Rev. Stat. §§ 6–1–107 to –112 & —113(2).

 Goodyear argues that Plaintiffs' CCPA claims should be dismissed because these were purely private commercial transactions that occurred outside of Colorado, and not the sort of direct consumer fraud that the CCPA was designed to address. I disagree. To establish a private claim under the CCPA, the plaintiff must show that: (1) the defendant engaged in an unfair or deceptive trade practice as set forth in Colo.Rev.Stat. § 6–1–105(1); (2) the challenged practice occurred in the course of the defendant's business, vocation, or occupation; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *See Hall v. Walter*, 969 P.2d 224 (Colo.1998). Under the CCPA, damages are available to "any person" injured by a defined deceptive trade practice. *See* Colo.Rev.Stat. § 6–1–113(1). Although the term "any person" is broad, the CCPA will not remedy private injuries. *See Rocky Mountain Rhino Lining, Inc. v. Rhino Linings USA, Inc.*, 37 P.3d 458, 463 (Colo. Ct.App.2001) (citation omitted), *cert. granted*, 2002 Colo. LEXIS 56 (Colo. Jan. 14, 2002). Three factors must be considered in assessing the public impact of an allegedly deceptive trade practice: the number of consumers directly affected by the challenged practice; the relative sophistication and bargaining power of the consumers affected by the challenged practice; and evidence that the challenged practice previously impacted other consumers or has significant potential to do so in the future. *See id.* at 463; *Martinez v. Lewis*, 969 P.2d 213 (Colo.1998) (deceptive trade practice involving only a single consumer suggests only a private wrong).

 Although Goodyear argues that these were purely private contracts, that assertion ignores the fundamental nature of the transactions. Goodyear sold 25 million linear feet of Entran II hose between 1989 and 1993, *see* Exhibit 3, and Colorado was the primary market for that hose. *See id.* Goodyear's marketing efforts, produced in conjunction with Heatway, were targeted to the ultimate consumer. Likewise, its website was targeted to the ultimate consumer. Goodyear attended trade shows with Heatway, marketing the hose directly to distributors and contractors. *See* Exhibit 24. Further, Goodyear branded the Entran II to imply certain characteristics that it allegedly knew were untrue. *See* Exhibit 23 at 48–62. At the same time, Goodyear's management noted that:

> We have no way of forecasting the expected life [of the Entran II]. It seems to me there is risk in this venture and one problem could negate years of profits.
>
> I am not going to sign off on this unless everyone else signs off knowing of the

possible problem. If it's decided we go ahead, perhaps a fund should be started to handle claims 10, 15, and 20 years ahead just like they have in the roofing business.

See Exhibit 1. Thus, a large number of consumers in Colorado were directly affected by the challenged practice. Most of these were individual homeowners or installers with relatively little sophistication and bargaining power. The evidence indicates that the alleged fraud impacted a large number of Colorado consumers and has significant potential to do so in the future. I therefore decline to grant summary judgment on Plaintiffs' CCPA claims.

### C. Civil Conspiracy

 Goodyear next argues that there is no evidence to support Plaintiffs' civil conspiracy claims. Once again I disagree. Plaintiffs' allege a civil conspiracy pursuant to Colo.Rev.Stat. § 13–21–111.5(4). Section 13–21–111.5(4) imposes joint liability on two or more persons "who consciously conspire and deliberately pursue a common plan or design to commit a tortious act." This section, however, does not set out all of the elements of the independent tort of civil conspiracy. See Jet Courier Serv., Inc. v. Mulei, 771 P.2d 486, 502 (Colo.1989); CJI–Civ.3d 27:1. The elements of civil conspiracy are that: (1) two or more persons; (2) come to a meeting of the minds; (3) on an object to be accomplished or a course of action to be followed; (4) and one or more overt unlawful acts are performed; (5) with damages as the proximate result thereof. See Jet Courier Serv., Inc. v. Mulei, 771 P.2d 486 (Colo.1989).

 To establish a claim pursuant to section 13–21–111.5(4), evidence of an express agreement is not necessary. See Larimer & Weld Irrigation Co. v. Walker, 65 Colo. 320, 176 P. 282, 283–84 (1918); United States v. Fox, 902 F.2d 1508, 1515 (10th Cir.1990) ("[B]y their very nature

conspiracies are often provable only by circumstantial evidence."); United States v. Peveto, 881 F.2d 844, 854 n. 12 (10th Cir.), cert. denied, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). However, the evidence must reveal some indicia of an agreement sufficient to prove that the defendants consciously conspired and deliberately pursued a common plan or design that resulted in a tortious act. See Schneider v. Midtown Motor Co., 854 P.2d 1322, 1326–27 (Colo.Ct.App.1992) (quoting Martinez v. Winner, 548 F.Supp. 278 (D.Colo.1982)); Hawkinson v. A.H. Robins Co., 595 F.Supp. 1290, 1314 (D.Colo.1984) (citing Morrison v. Goodspeed, 100 Colo. 470, 68 P.2d 458, 464–65 (1937)). Further, "[B]oth negligent and intentional acts are sufficient to give rise to joint liability for purposes of section 13–21–111.5(4)." Resolution Trust Corp. v. Heiserman, 898 P.2d 1049, 1056 (Colo.1995).

Plaintiffs base their claim on the decision by Goodyear and Heatway to jointly market the Entran II hose, including sharing funding and joint attendance at marketing shows. Goodyear tested the hose for Heatway and allowed use of its company logo. Plaintiffs allege that Goodyear and Heatway embarked on this joint campaign despite knowledge of problems with the product's oxygen barrier and longevity. Although Goodyear denies that any joint marketing agreement existed, see Exhibit 6 to Goodyear's Reply to Plaintiffs' Opposition, there is sufficient evidence to create a genuine issue of material fact and allow the claims to be heard by a jury.

### D. Heatway's Cross–Claims

 Goodyear moves to dismiss Heatway's cross-claims on the ground that they are barred by the doctrine of res judicata. The doctrine of res judicata "provides that when a court of competent jurisdiction has entered a final judgment

on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment." *Comm'r Internal Revenue v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (citing *Cromwell v. County of Sac,* 94 U.S. 351, 24 L.Ed. 195 (1876)).

▬ *Res judicata* requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the party against whom the doctrine is asserted has had a full and fair opportunity to litigate the issue in the prior proceeding. *See Nwosun v. Gen. Mills Rests., Inc.,* 124 F.3d 1255, 1257 (10th Cir.1997); *Cruz v. Benine,* 984 P.2d 1173 (Colo.1999). The parties agree that the first and second elements are met. Therefore, only the third and fourth elements are at issue here.

▬ Under the third element, the same claim for relief or same cause of action test, a court must look to the injury for which relief is demanded, not the legal theory on which the person asserting the claim relies. *See Petromanagement Corp. v. Acme–Thomas Joint Venture,* 835 F.2d 1329 (10th Cir.1988); *State Eng'r v. Smith Cattle, Inc.,* 780 P.2d 546 (Colo.1989); *Dalal v. Alliant Techsystems, Inc.,* 934 P.2d 830, 833 (Colo.Ct.App.1996). Further, all claims arising from a single transaction must "be presented in one suit or be barred from subsequent litigation." *Nwosun,* 124 F.3d at 1257; *Petromanagement,*

835 F.2d at 1335 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1980)).

▬ As to the fourth element, the central proposition of *res judicata* is that a party who has had a full opportunity to present a contention in court ordinarily should be denied permission to assert it on some subsequent occasion. *See* CHARLES ALAN WRIGHT, LAW OF FEDERAL COURTS § 100A (4th ed.1983) (quotation omitted). "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chem. Const. Corp.,* 456 U.S. 461, 481, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (citations omitted).

In 1997 Goodyear sued Heatway in Ohio to recover amounts due to it on sales of the Entran III. Heatway answered and asserted that it was entitled to a setoff for defective Entran II products allegedly sold by Goodyear. It also brought the following counterclaims: (1) Breach of Contract; (2) Breach of Non–Compete; (3) Claim for Contribution and Indemnification; (4) Claim for Declaratory Judgment; (5) Product Liability Claim; (6) Implied and Express Warranties; (7) Misrepresentations; (8) Negligence; (9) Fraud; (10) Failure to Warn; and (11) Unjust Enrichment. *See* Heatway's Exhibit A. Heatway voluntarily dismissed its breach of implied warranty of fitness claim. The Ohio Court, *sua sponte,* bifurcated the trial. The first phase of the trial addressed only the issue of whether all 25 million feet of the Entran II hose were merchantable as defined by the Ohio UCC. The second phase was for damages should Heatway prevail. The jury returned a verdict for Goodyear on the merchantability issue. *See* Exhibit 27. The Court entered judgment on all claims. *See* Exhibit 28. Heatway moved to modify the entry of judgment and dismiss its remaining claims

without prejudice. *See* Exhibit 29. The Court denied the motion and instead dismissed the remaining claims with prejudice but without a written analysis.

In this suit Goodyear and Heatway were jointly sued by the Plaintiffs. Heatway brought the following cross-claims against Goodyear: (1) strict liability; (2) breach of implied warranty of merchantability; (3) breach of implied warranty of fitness for a particular purpose; (4) breach of express warranties; (5) negligence; and (6) negligent misrepresentation. Goodyear has in turn brought cross-claims against Heatway for contribution or indemnity.

Given the unusual procedural posture of the Ohio litigation, any discussion of *res judicata* must begin with the Court's rulings in that case. In a pretrial hearing on January 4, 2000, the following exchange took place:

> THE COURT: [W]e're only trying the warranty of merchantability. So that's the only thing the jury is going to be deciding.
>
> MR. ARCHIBALD (GOODYEAR): What, Your Honor, does that do with respect to the express warranty? Does that mean they're going to come back after we win on implied warranty?
>
> THE COURT: If they lose, the case is over. If they win, we go to phase two. So that was decided a long time ago, so this is it.
>
> MR. ARCHIBALD: So all of their other claims are being dismissed with prejudice?
>
> MR. UNGAR (HEATWAY): That's a nice try. That's not what the Court has ruled at any time. All of our other claims are not dismissed with prejudice. You know that. Well, the Court can speak to that, but—
>
> THE COURT: Well, I have I made it clear when I did this a while ago that we were going to try the basic liability issue. And if Heatway won, we would go

to phase two. And if Heatway lost, that was it. So as far as I'm concerned, all of Heatway's liability claimsliability claims are in phase one of the trial and it's boiled down to one thing, whether Goodyear's hose was merchantable when it left the plant.

Heatway's Exhibit B at 16–17. Goodyear's counsel went on:

> MR. ARCHIBALD: I haven't heard whether they're dismissing with prejudice.
>
> THE COURT: Whether they're doing it or not, I'll dismiss it. We have boiled the case down to this point and everyone has understood what we are doing and Heatway has made a decision that they're dropping their claims and having done so, I mean—if they won't dismiss them afterward I'll dismiss them. I will say they have been dismissed as a result of what we have done with this trial.

*Id.* at 20–21. On February 24, 2000 the Ohio Court issued an oral ruling on Heatway's motion to modify an entry of judgment dismissing its claims. The Court stated:

> THE COURT: All right. I'm not going to change my prior order for the following reasons.
>
> I was—I was crystal clear on more than one occasion that we were trying this on the assumption that Goodyear's—I'm sorry, that Heatway's case boiled down to one claim.
>
> And Goodyear was extremely unhappy it had to try the case in this fashion, but I decided it was the fairest to both parties, and it would be the most intelligible to a jury, to boil Heatway's case down to one—one claim that they had, which is if this hose was unmerchantable at the time it was delivered from Goodyear to Heatway. And it was unfit for its one and only intended purpose, radiant heating in people's homes and businesses.

And that essentially all the other claims dovetailed into that, and this was the one that if the jury didn't find the hose was unmerchantable, they couldn't find any of the others.

Rather than give eight or nine claims to a jury and have them fumble around and try and sort them out, we boiled down to the one. And if Heatway won, they could collect a lot of damages for it. And if they lost, well, they lost.

And phase two would not have been all those other claims. Phase two would have included any defenses that Goodyear had [sic] damages....

So Heatway had no objection at any time to that formula.

In fact, they wanted a clean phase one, thumbs up/thumbs down, on merchantability, and Heatway got it. And at no time did Heatway suggest, well, we want to reserve all those other claims for future days....

The one thing this case was not about was whether the hose installed in Homeowner A's or Homeowner B's or Homeowner Z's house was defective. That's the issue that may be tried in a lawsuit brought by Homeowner A or Homeowner B or Homeowner Z. That's a totally different question....

We were trying a case to determine whether or not there was some fundamental design or manufactured failure or defect in all of this hose, because ... the one thing that there was no question about was that all of this hose was identical....

MR. MARVINNEY (HEATWAY): Your Honor, may I just clarify a couple of points that you've raised just so we have a clear record?

THE COURT: All right.

MR. MARVINNEY (HEATWAY): [A]t no time did Heatway waive its position or its right to proceed in some other jurisdiction that as far as a batch or a particular hose in a particular home, whether it's the Darrell home or the Luffridge home or some other home in Colorado or some other jurisdiction was in and of itself defective in that site, and we agree with the Court that those issues were not before the Court in this case.

THE COURT: Right. They were not before the Court. They weren't in Heatway's complaint, in my view. So they weren't—they weren't part of this case.

MR. MARVINNEY (HEATWAY): And so, for the record, in this case, then, it is clear that this case did not adjudicate whether or not Heatway or the plaintiffs in these other lawsuits have a claim as to the specific hose involved in their particular home, or on a given particular property site....

THE COURT: I've said what I said. And someone may have to litigate this in the future. But this case was not about whether the hose in a particular house essentially wasn't the hose that it was supposed to be. All right? ...

And it never was. And that's why we tried it in the fashion we did.

I mean, if Mr. Smith out in Colorado believes that the hose that was installed in his house wasn't the hose that it was represented to be, that that particular, you know, batch, or ˙that particular length of hose, wasn't, you know, the NBR compound that was supposed to be tested, et cetera, well, then, he can make that claim.

Goodyear's Exhibit 2 at 39–44. Heatway did not appeal the order dismissing its remaining claims with prejudice.

I conclude that, with the exception of Heatway's cross-claim for breach of implied warranty of merchantability, neither Heatway nor Goodyear had a full and fair opportunity to litigate the claims at issue.

The Ohio Court limited the issue to merchantability of all 25 million feet of hose. None of the remaining claims or cross-claims were heard. Instead, the Court dismissed the remaining claims with prejudice. Although the Court stated that all of Heatway's claims "boiled down" to merchantability, no analysis of this is available. *See Mason Jar Rest. v. Indus. Claim Appeals Office of State of Colo.*, 862 P.2d 1026 (Colo.Ct.App.1993) (Colo.Rev.Stat. § 8–43–501 establishes a "review" proceeding based solely on medical records; thus, the parties do not have a full and fair opportunity in which to litigate the necessity, reasonableness, or appropriateness of the disputed medical care). I therefore conclude that there is reason to doubt the quality, extensiveness, and fairness of procedures followed in the prior litigation.

Further, even if the parties had a full and fair opportunity to litigate, the Ohio Court ruled that some claims involving these parties could be brought in another forum. The Court specifically states that the issue of individual homeowner's systems was not at issue, and thus not subject to *res judicata.* I find this case is analogous to *Louis Cook Plumbing & Heating, Inc. v. Frank Briscoe Co.*, 445 F.2d 1177 (10th Cir.1971). There, a contractor had brought an action against the government under the Miller Act, 40 U.S.C. § 270, for labor and material supplied in the performance of a government contract. At the time of judgment, in the colloquy between the court and counsel for the plaintiff, counsel asked the court to enter this judgment "without prejudice to the plaintiff to file an action in negligence or on any other theory of law." *Id.* at 1178. In response, the trial judge replied, "No, I would not care to put that in the formal judgment. I have in essence said that in my findings, and I think it is clear, that the whole basis of the court's decision is purely the liability of the defendants under the Miller Act Bond, and nothing

else." *Id.* In a subsequent action related to the same project the defendant raised the defense of *res judicata.* The appellate court concluded "the doctrine of *res judicata* does not bar appellant Cook's present action.... such rule cannot apply here because Cook was actually denied the right to litigate any issue in the prior action except Miller Act questions." *Id.* at 1179. As noted by a later court, "while the judge in *Louis Cook* could have *expressly* reserved the plaintiff's right to proceed in the second case, the judge felt it was unnecessary, that plaintiff's right to proceed was *implicit* in his ruling." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1233 –1234 (10th Cir.1999) (Henry, J. dissenting).

Here, the case deals not with all 25 million feet of hose, but with the hose placed in individual homes. The Judge in the Ohio action did not expressly reserve Heatway's rights to litigate in the context of individual homeowner's claims. However, he made clear in his comments that the option was left open. Heatway and Goodyear may therefore litigate each company's liability for the alleged failure of particular hose in a particular system. However, all 25 million feet of Entran II hose have already been determined merchantable by the Ohio jury. Therefore, Heatway's cross-claim for breach of implied warranty of merchantability must be dismissed.

Accordingly, IT IS ORDERED that:

(1) Goodyear's motion for summary judgment on all claims against it is GRANTED as to Heatway's sixth cross-claim for breach of implied warranty of merchantability and is DENIED in all other respects; and

(2) Heatway's sixth cross-claim, breach of implied warranty of merchantability, is DISMISSED.